COMMONWEALTH *vs.* MAXINE E. SNEED.

No. 01-P-55.

Suffolk. March 15, 2002. - November 8, 2002.

Present: DUFFLY, KASS, & TRAINOR, JJ.

Further appellate review granted, 438 Mass. 1109 (2003).

*Practice, Criminal,* Findings by judge. *Constitutional Law,* Admissions and confessions. *Evidence,* Admissions and confessions.

A Boston Municipal Court judge properly allowed a criminal defendant's mo-
tion to suppress statements made by the defendant to a State trooper and a
civilian financial investigator, where the judge properly concluded that a
reasonable person, in the circumstances, would have perceived the setting
of the defendant's interrogation as isolating and coercive; where the judge
did not err in concluding not only that the investigation had focused on the
defendant, but also that the trooper conveyed his suspicions in an accusa-
tory manner during the interrogation; where the interrogation was aggres-
sive and custodial, and in no way controlled by the defendant; and where
the judge properly concluded that, given the nature of the interrogation, its
manifest focus on the defendant, and her reasonable perception that she
was unable to leave or otherwise end the interrogation, it was custodial in
nature and conducted without the protection of Miranda warnings.
[393-396]

COMPLAINT received and sworn to in the Boston Municipal Court Department on September 10, 1999.

A pretrial motion to suppress evidence was heard by *Dermot Meagher*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Cathryn A. Neaves*, Assistant Attorney General, for the Commonwealth.

*Dana Alan Curhan* for the defendant.

TRAINOR, J. This is an interlocutory appeal by the Com-
monwealth from a Boston Municipal Court judge's allowance

of a motion to suppress statements made by the defendant to State Trooper Matthew Murphy and civilian financial investigator James McFadden. The investigation resulted in the issuance of a complaint charging larceny over $250 by a single scheme, in violation of G. L. c. 266, § 30(1). The judge made sparse but adequate subsidiary and ultimate findings that the statements were the product of a custodial interrogation without the defendant having been given the warnings required by *Miranda* v. *Arizona*, 384 U.S. 436 (1966). We affirm the judge's allowance of the motion to suppress.

*Facts.* The findings of the motion judge are summarized as follows. On June 9, 1999, the defendant, age seventy and a long-term employee of the State Lottery Commission (commission), was home sick for the fourth day from her job as one of two employees of the Game Room at the McCormack State office building. The Game Room is a commission outlet where lottery tickets are sold to the public. The defendant suffered from asthma and was using a nebulizer that required an electric outlet to operate.

At approximately 1:00 P.M., Trooper Murphy and McFadden rang her doorbell. They were in plain clothes and unarmed. Their arrival had been unannounced and the defendant answered the door in what appeared to be pajamas or sweatpants. Trooper Murphy intended to inquire about the defendant's job at the Game Room and about $24,000 in missing receipts. A simultaneous investigation was being conducted of the Game Room's other employee. Trooper Murphy and McFadden had copies of the daily reporting forms from the Game Room for January through March, 1999, and the results of Trooper Murphy's investigation into the defendant's slot machine gambling activity at a Connecticut casino.

The interrogation lasted approximately two hours. Although the Commonwealth claimed that the defendant admitted taking $24,000, Trooper Murphy did not arrest her. She was later summonsed. The defendant was not given Miranda warnings, was not told that she did not have to answer questions, and was not told that she could leave or order the trooper and the investigator to leave her apartment. Three hours after the interrogation, the defendant received emergency treatment for her asthma.

*Discussion.* We accept the motion judge's subsidiary findings because they are supported by the evidence, and we give substantial deference to his ultimate findings. We make our own determination of the correctness of the judge's legal rulings. *Commonwealth* v. *Eagles*, 419 Mass. 825, 832 n.9 (1995). We will apply the analysis set forth in *Commonwealth* v. *Bryant*, 390 Mass. 729, 736-742 (1984). The four factors to be considered pursuant to *Bryant* are "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the [defendant] . . . [(and whether this suspicion has been communicated to the defendant, see *Stansbury* v. *California*, 511 U.S. 318, 324 (1994); *Commonwealth* v. *Groome*, 435 Mass. 201, 212 (2001)]; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave . . . ." *Commonwealth* v. *Bryant, supra* at 737. See *Commonwealth* v. *Groome, supra* at 211-212.

1. *Place of interrogation.* The defendant was questioned in her home, "familiar surroundings" not often construed as oppressive for *Miranda* purposes. See *Commonwealth* v. *Conkey*, 430 Mass. 139, 144 (1999). However, the question is not whether the defendant is familiar with her surroundings, but rather whether "a reasonable person in [her] circumstances would have found the setting isolating and coercive." *Commonwealth* v. *Gallati*, 40 Mass. App Ct. 111, 113 (1996). In some cases, a "measure of physical oppressiveness caused by the presence and deployment" of officers in an individual's home may give rise to a custodial environment. See *Commonwealth* v. *Coleman*, 49 Mass. App. Ct. 150, 154 (2000) (suspect questioned in small room of house in presence of three officers, one of whom blocked door, was in custody for *Miranda* purposes). See also *Orozco* v. *Texas*, 394 U.S. 324, 327 (1969) (suspect questioned in his room at boarding house by four officers was in custody).

In this case, the defendant had been home sick for four days suffering from asthma. She was using a nebulizer which was

plugged into an electric socket in the apartment, and her illness required her to remain close to the nebulizer for relief. The trooper, accompanied by an investigator, arrived at the defendant's apartment unannounced. The defendant greeted the trooper and the investigator at the door in pajamas or sweat-pants, and after informing them that she was ill, they nevertheless asked to enter the apartment. During the two hours of questioning that followed, the defendant asked the trooper on several occasions if she should call a lawyer. The trooper responded that she should call a priest for her gambling problem.[1] The defendant was never told that she did not have to answer the trooper's questions, or that she could end the questioning by leaving, or that she could order the trooper and the investigator to leave her apartment. The motion judge properly concluded that a reasonable person, in these circumstances, would have perceived the setting as isolating and coercive.

2. *Focus of the investigation.* Miranda warnings are not required simply because the person being questioned has become the focus of the police investigation. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 171, cert. denied, 525 U.S. 1007 (1998). "It is well settled . . . that a police officer's subjective view that the individual under questioning is a suspect, if *undisclosed*, does not bear upon the question whether the individual is in custody for purposes of *Miranda*" (emphasis added). *Stansbury* v. *California*, 511 U.S. at 324.

However, the conveyance of police suspicions can affect the custodial nature of an interrogation. "An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.' " *Id.* at 325 (citations omitted). The trooper and the investigator came to the interrogation armed with Game Room daily reporting forms that covered a three-month period in 1999 as well as with the results of a separate investigation into the

[1]The motion judge found that there was no evidence that the defendant was Catholic.

defendant's gambling activity at a Connecticut casino. Over the course of a two-hour interrogation, the defendant was repeatedly confronted with this purported evidence against her. The motion judge determined that the investigation had focused on the defendant at the time of the interrogation, and that this fact was conveyed by the trooper to the defendant. Contrast *Commonwealth* v. *Gendraw*, 55 Mass. App. Ct. 677, 683 (2002). This manifestation of the trooper's belief affected how the defendant viewed her freedom to leave, and contributed to the custodial nature of the interrogation. The motion judge did not err in concluding that the investigation had not only focused on the defendant but that the trooper conveyed his suspicions in an accusatory manner during the interrogation.

3. *Nature of the interrogation.* The motion judge credited the defendant's testimony that the trooper's questioning was "very quiet, forceful, insistent, stern and sort of accusatory." This was not an informal conversation and it was not devoid of attempts to compel statements from the defendant. Contrast *Commonwealth* v. *Gil*, 393 Mass. 204, 212 (1984). The motion judge also found that the defendant experienced stress as a result of the interrogation and used the nebulizer on several occasions to assist her breathing. As previously noted, the defendant sought emergency treatment three hours after the interrogation ended. The motion judge reasonably took into account the defendant's age and her physical condition and determined that the atmosphere of the questioning was aggressive and custodial, and that its contours were in no way controlled by the defendant.

Furthermore, *Miranda* protections come into play whenever a person in custody is subjected to "express questioning or its functional equivalent. . . . It must . . . be established that a suspect's incriminating response was the product of words or actions on the part of the police that they should have known were reasonably likely to elicit an incriminating response." *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301, 303 (1980). Such was the intent of the police and the nature of the interrogation here.

4. *Freedom to end the interrogation and leave.* The motion judge found that the defendant was a seventy year old woman who was ill and reliant on a nebulizer that was plugged into an

electric socket of her apartment. The defendant could not leave the site of the interrogation in a very literal sense, and the trooper never indicated that she had the right to otherwise terminate the interrogation. To the contrary, the interrogation lasted for two hours, with one brief interruption, a significant length of time considering the defendant's age and ill health. The tone of the interrogation was quiet but aggressive and appears to have ended only when and because the trooper got the information he wanted. Although the trooper claimed to have sufficient probable cause to arrest the defendant at the end of the interrogation, she was summonsed later instead. That the defendant was not arrested at the conclusion of the questioning is not conclusive to the question whether the interrogation was custodial, although it may be considered along with other factors. In making a determination as to the custodial nature of interrogation, "[r]arely is any single factor conclusive." *Commonwealth* v. *Bryant*, 390 Mass. at 737. The more appropriate test of whether the allegedly incriminating statements were made pursuant to a custodial interrogation is whether a reasonable person in the defendant's position would have believed that she was free to end the interrogation and leave. *Commonwealth* v. *Gil, supra* at 212. "The basic inquiry is whether, from the point of view of the defendant, the interrogation took place in a coercive environment." *Commonwealth* v. *Conkey,* 430 Mass. at 144.

It is implicit in the motion judge's findings that the defendant could not leave the interrogation and did not feel that she could otherwise end the questioning. The motion judge properly concluded that given the nature of the interrogation, its manifest focus on the defendant and her reasonable perception that she was unable to leave or otherwise end the interrogation, it was custodial in nature and was conducted without the protection of Miranda warnings. Because the interrogation was conducted without the required protections, any statements made during the custodial interrogation must be suppressed. *Miranda* v. *Arizona*, 384 U.S. at 479.

*Order allowing motion to suppress affirmed.*