## Commonwealth *vs.* Andrea Brown.

No. 01-P-1276.

Worcester. December 6, 2002. - February 6, 2003.

Present: Lenk, Doerfer, & Cohen, JJ.

*Probable Cause. Constitutional Law,* Search and seizure, Probable cause, Admissions and confessions, Double jeopardy. *Search and Seizure,* Probable cause. *Evidence,* Informer, Admissions and confessions.

A warrantless search of a shopping bag found by State police, acting on a tip from a confidential informant, at the feet of the defendant after she had entered a common hallway in the apartment building in which she was staying, resulting in the seizure of a large bag of cocaine, was justified as a search incident to a lawful arrest even though the search preceded the formal arrest of the defendant, where, on the basis of the informant's having satisfied the test as to reliability and basis of knowledge (*Aguilar* v. *Texas,* 378 U.S. 108 [1964], and *Spinelli* v. *United States,* 393 U.S. 410 [1969]), and the informant's detailed tip having been corroborated by police observations, the judge was warranted in concluding that there was probable cause to arrest the defendant independent of the results of the search. [327-329]

At a criminal trial in which the defendant's counsel elected to use the defendant's ambiguous responses and apparently confused state of mind at the time of her arrest as a positive indication that she had no knowledge that an item she was carrying was a large quantity of cocaine, there was no prejudicial error created by the presence of this evidence in the case, where the evidence was important to the defense, and it was of little consequence that it was introduced by the prosecution in view of the lack of objection at trial; where the weight of the evidence against the defendant was substantial without reference to her ambiguous conduct; and where the judge gave a strong curative instruction that the defendant had no duty to speak to the police and that any silence on her part could not be used as evidence against her. [329-330]

There was no merit to the contention by a criminal defendant, made for the first time on appeal, that her interrogation by State police at the time of her arrest was custodial, that she had not been given Miranda warnings prior to being questioned, and thus, that any and all of her ambiguous conduct and statements to the police should have been excluded, where the issue could not be determined as a matter of law without factual findings; further, any error in admitting such statements and conduct did not create a substantial risk of a miscarriage of justice, given that the failure of the defendant to raise the Miranda issue in the trial court was consistent with the defendant's apparent trial strategy. [330-332]

Where, at a prior trial on the same indictment at issue in the instant criminal case, the Commonwealth had made references in its opening to certain evidence that was inadmissible hearsay, thus leading to the declaration of a mistrial, but where the trial judge had found as a fact that the prosecutor had not procured the mistrial through bad faith or overreaching, the judge did not err in denying the defendant's motion to dismiss based upon a claim of double jeopardy. [332-333]

INDICTMENT found and returned in the Superior Court Department on October 13, 1999.

A pretrial motion to suppress evidence was heard by *Francis R. Fecteau*, J., and the case was tried before *James P. Donohue*, J.

*Cindy Ellen Hill* for the defendant.

*Christopher P. Hodgens*, Assistant District Attorney, for the Commonwealth.

DOERFER, J. The defendant was convicted under G. L. c. 94C, § 32E(*b*)(4), of trafficking in 200 grams or more of cocaine. She claims on appeal that (1) her motion to suppress the cocaine found in a shopping bag she was carrying was erroneously denied; (2) evidence of her silence or ambiguous statements and conduct deemed equivalent to an admission in response to police questioning was improperly admitted and commented upon at trial; and (3) her motion to dismiss the indictment should have been allowed on double jeopardy grounds. We affirm.

*Motion to suppress the cocaine.* Acting on a tip from a confidential informant, the State police confronted the defendant after she had entered a common hallway in the apartment building in which she was staying with her stepbrother. The motion judge found,[1] after a hearing on a motion to suppress, that there was probable cause to arrest the defendant and that the search of the shopping bag at her feet was incident to a lawful arrest. In brief summary, there was evidence that the confidential informant had previously supplied reliable information to the

---

[1]The motion judge did not make detailed findings. He ruled from the bench that the confidential informant was reliable based on previous information given by the informant and that there was a basis of knowledge from an overheard telephone call. He ruled in the alternative that there were exigent circumstances justifying the seizure of the cocaine. These findings are contained in a two-page transcript of his oral findings.

police leading to the purchase of drugs in a controlled buy. See *Commonwealth* v. *Desper*, 419 Mass. 163, 168 (1994). The confidential informant was well known to the police and had been supplying information to them for over one year. See *Commonwealth* v. *Welch*, 420 Mass. 646, 651 (1995).

As a basis of knowledge for the tip, there was evidence that the confidential informant had overheard a person speaking on the telephone to the defendant indicating that the defendant would be leaving New York City on a Giovanni Express van, due to arrive in Worcester at about 7:30 P.M., with a large quantity of drugs, and that she usually carried such drugs in a shopping bag.

The information given by the confidential informant was corroborated by police observations. The police observed the van as it left the Massachusetts Turnpike at the time predicted and followed it until it arrived at the apartment building where the informant told the police the defendant would go and where the police knew (from previous surveillance) the defendant would stay when in Worcester. The defendant had a large shopping bag with her as she entered the building. There she was confronted by the police in a basement hallway leading to her stepbrother's apartment. The police confirmed her identity and the fact that she had just arrived from New York. They seized her shopping bag and found in it a large bag of cocaine under some clothes. She was not placed under arrest until a short time later when the interview adjourned to her stepbrother's apartment at her request.

From these facts the judge was warranted in concluding that there was probable cause to arrest the defendant at the time of the search and seizure. The informant satisfied the *Aguilar-Spinelli*[2] test as to reliability and basis of knowledge (see *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 [1985]; *Commonwealth* v. *Warren*, 418 Mass. 86, 87 [1994]), and the detailed tip was corroborated by police observations. See *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990). See also *Commonwealth* v. *Upton*, *supra* at 375; *Commonwealth* v. *Alfonso A.*, 438 Mass. 372, 375, 377 (2003). Thus, the search of her bag was justified

---

[2]*Aguilar* v. *Texas*, 378 U.S. 108 (1964). *Spinelli* v. *United States*, 393 U.S. 410 (1969).

under the Fourth Amendment to the United States Constitution as a search incident to a lawful arrest. The fact that the search preceded the formal arrest is not important "as long as probable cause [to arrest] existed independent[ly] of the results of the search." *Commonwealth* v. *Brillante,* 399 Mass. 152, 154 n.5 (1987). *Commonwealth* v. *Mantinez,* 44 Mass. App. Ct. 513, 517-518 (1998).

*Admissibility of evidence of statements, nonverbal conduct, and silence.* When the defendant was confronted by the police in the hallway of the apartment building they asked her a series of questions. Evidence of the statements made by the police to the effect that they had reason to believe that she possessed drugs was excluded. However, the Commonwealth's witnesses were allowed to testify as to certain responses made by the defendant to police when they asked her if she had drugs.[3] Some of the responses were verbal and others allegedly were by way of glances to the shopping bag on the floor.

To the extent that the responses could be construed as silence, the trial judge informed counsel that no such use could be made of the defendant's words or actions. See *Commonwealth* v. *Ferrara,* 31 Mass. App. Ct. 648, 652 (1991). The trial judge also instructed the jury forcefully in his charge that a defendant has no duty to speak to the police and that any silence on her part could not be used as evidence against her.

Defense counsel elected to use the defendant's ambiguous responses and apparently confused state of mind as a positive indication that, as she claimed, she had no knowledge that the item she was carrying to her stepbrother was a large quantity of cocaine. See note 4, *infra.* He pursued this tactic in cross-examination of the Commonwealth's witnesses, in his examination of the defendant, and in his closing argument. In these circumstances there was no prejudicial error created by the presence of this evidence in the case. *Commonwealth* v. *Adams,* 434 Mass. 805, 812 (2001). The court in *Adams* stated, "There are five factors we must consider when determining the effect

---

[3]Defense counsel's objection at trial was to statements by the police that they had *reason to believe* that the defendant possessed drugs (and to her silence). This objection was sustained. Evidence that the police *asked her* if she had drugs in the bag was admitted without objection.

of an error of this type, including (1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions. These factors are not exclusive or exhaustive, nor are they necessarily to be accorded equal weight" (citations omitted). *Ibid.* In sum, the evidence was important to the defense, and it was of little consequence that it was introduced by the prosecution in view of the lack of objection at trial. The weight of the evidence against the defendant was substantial[4] without reference to her ambiguous conduct during her confrontation with the police, and there was a strong curative instruction given by the trial judge. The evidence was repeated, but that is not an important consideration in view of all the other factors.

The defendant also argues for the first time on appeal that her interrogation was custodial, that she had not been given her Miranda warnings prior to being questioned, and thus, that any and all of her responses[5] should have been excluded. See *Commonwealth* v. *Barros*, 56 Mass. App. Ct. 675, 678-679 (2002). Since this argument was not made in the trial court, either at the hearing on the motion to suppress evidence or as an objection at trial, our standard of review is whether there was a substantial risk of a miscarriage of justice. See, e.g., *Commonwealth* v. *Adams*, *supra* at 811.

Whether the defendant's interrogation was custodial depends on a number of factors.[6] See *Commonwealth* v. *Sneed*, 56 Mass. App. Ct. 391 (2002) (holding that interrogation at home can

---

[4]The Commonwealth in closing forcefully pointed to the implausibility of the theory that she did not know about the presence of over $90,000 worth of cocaine in her shopping bag, given her testimony that she was asked by a friend of the family in New York to carry a plastic bag (which was closed by a knot tied at the top) to her stepbrother.

[5]At trial the police referred to the conduct of the defendant in looking down at her shopping bag when they asked her if she had drugs. This evidence of her "conduct [was] offered to show [her] state of mind [and was] testimonial." *Commonwealth* v. *Conkey*, 430 Mass. 139, 142 (1999), citing *Commonwealth* v. *Brennan*, 386 Mass. 772, 778 (1982).

[6]The issue of whether her interrogation was custodial was not explored either on the motion to suppress or at trial. In assessing whether there was a substantial risk of a miscarriage of justice we have examined the evidence in

be custodial). The four factors to be considered are (1) the place of the interrogation; (2) whether a reasonable person in the position of the person being questioned would not feel free to leave the place of questioning[7]; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave. *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984). No single factor is conclusive. *Ibid.*

Thus, the motion judge's ruling that the officers had probable cause to arrest the defendant, even augmented by an inference that they intended to arrest her before she had completed making statements or engaging in testimonial conduct, does not establish as matter of law that her interrogation was custodial. The record reveals that there was conflicting evidence relating to the *Bryant* factors. At trial the defendant described her encounter with the police in terms that would support a conclusion that her interrogation was custodial. The police witnesses gave a different account.[8] A trier of fact, if the issue had been raised, could have reached either result on the evidence, and the

the entire record, whether produced at the hearing on the motion to suppress or at trial.

[7]The Supreme Judicial Court has "recently clarified that, in applying the second [ ] factor [set forth in *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1983)], the undisclosed subjective belief of the interrogator as to whether the person interviewed is a suspect is immaterial; rather, courts must look to whether a reasonable person in the position of the person being questioned would not feel free to leave the place of questioning. *Commonwealth* v. *Morse*, 427 Mass. 117, 124-126 n.6 (1998)." *Commonwealth* v. *Vinnie*, 428 Mass. 161, 170 n.13, cert. denied, 525 U.S. 1007 (1998). (The second *Bryant* factor was "whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect." 390 Mass. at 737.)

[8]Even their statement to her that they believed she was in possession of drugs does not imply as matter of law that she regarded her situation as custodial. In *Commonwealth* v. *Morse*, *supra* at 125 n.6, the authorities were reviewed in these terms: "[i]n *Beckwith* v. *United States*, 425 U.S. 341, 346-347 (1976), quoting *United States* v. *Caiello*, 420 F.2d 471, 473 (2d Cir. 1969), cert. denied, 397 U.S. 1039 (1970), the Court stated that '[i]t was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was conducted,

issue cannot be determined as matter of law without factual findings. "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980).

In any event, the failure of the defendant to raise the Miranda issue in the trial court is consistent with her tactical approach at trial in which she sought to employ her statements and conduct as positive evidence of her lack of knowledge about the contents of the package she was carrying. See *Commonwealth* v. *Squailia*, 429 Mass. 101, 110-111 (1999) (failure to file motion to suppress was reasonable tactic as some statements supported defense strategy); *Commonwealth* v. *Martinez*, 437 Mass. 84, 94 (2002). Any error in admitting such statements and conduct did not create a substantial risk of a miscarriage of justice. "Whatever the specific tactical reason for proceeding in this manner and regardless of its net effect, the fact that it was part of an apparent trial strategy weighs heavily in determining the existence of constitutional unfairness and prejudicial effect." *Commonwealth* v. *Adams*, *supra* at 813-814.

*Double jeopardy after mistrial.* At a trial on this indictment commenced earlier the same day the Commonwealth made references in its opening to certain evidence that was inadmissible hearsay. On motion of the defendant a mistrial was declared. Although the trial judge admonished the assistant district attorney, he found as a fact that the prosecutor had not procured a mistrial through bad faith or overreaching. In substance, the prosecutor claimed that he (mistakenly) believed he could mention the hearsay in question, which he believed would be admissible as setting the stage under *Commonwealth* v. *Rosario*, 430 Mass. 505, 509 (1999). The character of the conduct leading to a mistrial is a question of fact for the trial judge, and the record supports the judge's finding on this matter. See our recent discussion in *Commonwealth* v. *Curtis*, 53 Mass. App. Ct. 636 (2002). Having made this finding, the trial judge

which led the court to impose the *Miranda* requirements with regard to custodial questioning.' " Also, the undisputed fact that the police subjectively intended to arrest her does not establish as matter of law that she understood or believed that she was not free to leave.

was correct in denying the defendant's motion to dismiss based upon a claim of double jeopardy. *Donavan* v. *Commonwealth*, 426 Mass. 13, 14-15 (1997).

*Judgment affirmed.*