COMMONWEALTH vs. MAXINE E. SNEED.

Suffolk. September 5, 2003. - October 14, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN & CORDY, JJ.

*Practice, Criminal,* Voluntariness of statement. *Due Process of Law,* Police custody.

A defendant charged with larceny over $250 by a single scheme in violation of G. L. c. 266, § 30 (1), was not entitled to Miranda warnings at an interview in her home with a State trooper and an investigator from the Attorney General's office during which she made incriminating statements, where that interview was not custodial, in that a reasonable person in the defendant's position would have known that she was free to terminate the interview and to ask the two men to leave her home [219-222]; moreover, the defendant's statements to the investigators were voluntary, as nothing in the record supported a legal conclusion that her will was overborne [222].

COMPLAINT received and sworn to in the Boston Municipal Court Department on September 10, 1999.

A pretrial motion to suppress evidence was heard by *Dermot Meagher*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

*Dana Alan Curhan* for the defendant.

GREANEY, J. The defendant, seventy years of age and a long-term employee of the State Lottery Commission, made incriminating statements during an interview with a State trooper and an investigator from the Attorney General's Office regarding approximately $24,000 in receipts missing from the Boston

lottery office. The defendant subsequently was summonsed to the Boston Municipal Court and there arraigned on a complaint charging larceny over $250 by a single scheme in violation of G. L. c. 266, § 30 (1). After an evidentiary hearing on the defendant's motion to suppress her statements, a judge entered a memorandum of decision and order in which he ruled that the statements were the product of custodial interrogation without the warnings required under *Miranda* v. *Arizona*, 384 U.S. 436 (1966), and, thus, inadmissible. A single justice of this court allowed the Commonwealth's application under Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), to pursue an interlocutory appeal from the order granting the motion to suppress, and the appeal was transferred to the Appeals Court. That court affirmed the judge's order. *Commonwealth* v. *Sneed*, 56 Mass. App. Ct. 391 (2002). We granted the Commonwealth's application for further appellate review and now conclude that the defendant was not entitled to Miranda warnings because she was not in custody at the time the statements were made. We further conclude, based on the judge's findings of facts and on our independent examination of the transcript of the evidentiary hearing, that the defendant's statements were voluntarily made. Accordingly, we vacate the order allowing the motion to suppress and remand the case to the Boston Municipal Court for further proceedings.

1. The facts as found by the judge, all of which are supported by the evidence, are as follows. See *Commonwealth* v. *Morse*, 427 Mass. 117, 118 (1998). On Wednesday, June 9, 1999, the defendant remained home due to illness from her job as one of the two employees of the "Game Room," a commission outlet where lottery tickets are sold to the public. At approximately 1 P.M., State Trooper Matthew Murphy, accompanied by a civilian investigator, James McFadden,[1] rang her doorbell. Trooper Murphy was unarmed and in plain clothes. The two men went to the defendant's home, unannounced, with the purpose of inquiring about the defendant's job at the Game Room and about $24,000

---

[1]James McFadden was a financial investigator for the Attorney General's office.

in missing lottery receipts. A simultaneous investigation was being conducted of the other employee of the Game Room. Trooper Murphy and McFadden had with them copies of the Game Room's daily reporting forms for January, 1999, through March, 1999, as well as the results of another trooper's investigation of the defendant's slot machine gambling activity at Foxwoods Casino in Connecticut.

The defendant answered the door dressed in sweat pants or pajamas. Trooper Murphy identified himself and asked if they could come in to talk to her about her job. The defendant answered that she was not feeling well but that they could come in. The defendant suffered from asthma, and her condition required the use of a nebulizer, which was plugged into an electric socket in her home.

The interview lasted for two hours. Trooper Murphy asked questions of the defendant, and McFadden recorded her responses.[2] The defendant was stressed by the interrogation, and a couple of times during the interview, she used her nebulizer. At one point she left the room to rid herself of accumulated phlegm and to answer a telephone call from her daughter. The defendant told her daughter she had visitors from the Lottery but did not reveal to her daughter, who sensed her discomfort, the reason for the visit. At no time was the defendant informed that she did not have to answer the questions put to her or that she could leave the room or order the two men to leave her apartment. The defendant was not given Miranda warnings.

The judge made no findings regarding specific questions posed to the defendant, but he appeared to credit the defendant's testimony that Trooper Murphy's tone was "very quiet, forceful, insistent, stern and sort of accusatory."[3] On a few occasions during the interview, the defendant asked whether she should call a lawyer. Trooper Murphy informed the defendant that she

---

[2]The record indicates that the defendant answered all the questions posed to her.

[3]Trooper Murphy testified that he was "[c]onversational, polite" on his arrival at the defendant's home and that he was "[p]olite, sympathetic maybe" when he questioned the defendant about the missing money.

should call a priest to discuss (what Trooper Murphy characterized as) her gambling addiction.[4]

The defendant made various incriminating statements to the investigators.[5] Although the Commonwealth claims that she admitted the larceny, she was not arrested at the conclusion of the questioning but was later summonsed. Three hours after the interview ended, the defendant received emergency treatment for her asthma.

2. The central issue is whether the judge correctly concluded that the defendant was in custody, for purposes of Miranda, at the time she made the statements to Trooper Murphy in her home on June 9, 1999.[6] "In reviewing the judge's decision, we 'give[] substantial deference to the judge's ultimate findings and conclusions of law, but independently review[] the correctness of the judge's application of constitutional principles to the facts found.' " *Commonwealth* v. *Morse*, 427 Mass. 117, 122 (1998), quoting *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996).

In his memorandum of decision and order on the motion to suppress, the judge offered no justification for his ruling that the defendant's interrogation was custodial in nature. We agree with the Appeals Court, however, that implicit in the judge's determination of custody was his conclusion that "the defendant could not leave the interrogation and did not feel that she could otherwise end the questioning." *Commonwealth* v. *Sneed, supra* at 396. This factual determination, however, does not support the legal conclusion that the judge apparently attached to it.

---

[4]The defendant testified that Trooper Murphy suggested that she "needed to call a priest if [she] had a priest or someone that [she] could speak to because [she] had a gambling problem."

[5]The content of the statements made by the defendant is disputed. The Commonwealth claims that the defendant admitted taking the $24,000 as well as scratch tickets without paying for them. The defendant claims that she said only that she occasionally borrowed small sums of money from the office, but that she replaced the money with her check and repaid with cash as soon as she had visited her bank, and that she paid for all of the scratch tickets except those that had been damaged by the ticket machine.

[6]"Miranda warnings are only necessary for 'custodial interrogations.' " *Commonwealth* v. *Jung*, 420 Mass. 675, 688 (1995), quoting *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966). The parties are in agreement that the two-hour interview constituted an interrogation.

The determination of custody depends primarily on the objective circumstances of the interrogation, and not on the subjective views of either the interrogating officers or the person being questioned. The critical question in making the custody determination is "whether, considering all the circumstances, a reasonable person in the defendant's position would have believed that he was in custody." *Commonwealth* v. *Brum*, 438 Mass. 103, 111 (2002), quoting *Commonwealth* v. *Damiano*, 422 Mass. 10, 13 (1996). See *United States* v. *Ventura*, 85 F.3d 708, 712 (1st Cir. 1996) ("court must first examine all the circumstances surrounding the exchange between the government agent and the suspect, then determine from the perspective of a reasonable person in the suspect's shoes whether there was . . . a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest").[7] Although the inquiry undoubtedly encompasses a subjective element, for it requires a court initially to examine the coercive elements of the particular questioning session from the point of view of the person being questioned, its ultimate resolution depends on how a reasonable person would feel in those circumstances. See *Commonwealth* v. *Conkey*, 430 Mass. 139, 144 (1999). This court has set forth four indicia of custody: (1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that the person is a suspect; (3) the nature of the interrogation, i.e., whether the interview was aggressive or, instead, informal; and (4) whether, at the time the incriminating statement or statements were made, the suspect was free to end the interview by leaving the place of the interrogation or by asking the interrogator to leave, or, alternatively, whether the interview terminated with the defendant's arrest. See *Commonwealth* v. *Groome*, 435 Mass. 201, 212 & n.13 (2001). There is no specific formula for weighing the relevant factors, see *Commonwealth* v. *Haas*, 373 Mass. 545, 552 (1977), *S.C.*, 398 Mass. 806 (1986), but "[r]arely is any single factor conclusive." *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984).

---

[7]Whether an interrogation is custodial for Miranda purposes, of course, is primarily a question of Federal constitutional law. See *Commonwealth* v. *Morse*, 427 Mass. 117, 123 (1998).

We now apply the above analytical framework to the questioning of the defendant by Trooper Murphy. The defendant herself voluntarily admitted her questioners into the familiar surroundings of her home. See *Commonwealth* v. *Conkey, supra* at 144; *Commonwealth* v. *Painten*, 429 Mass. 536, 541 (1999); *Breese* v. *Commonwealth*, 415 Mass. 249, 255-256 (1993). It is true that the defendant was one of only two employees at the Game Room, from which a substantial amount of money was missing. That she may have been a target in the investigation does not inform the custody determination, however, in view of the fact that, at the outset of the questioning, she was informed only that her visitors "would like to talk to her about her job." Moreover, undisputed testimony at the suppression hearing indicates that, for the first half of the interview, the defendant was questioned solely in general terms about how the Game Room operated, and not about the missing money. There is no evidence of shouting or raised voices on the part of the investigators. At one point, the defendant freely left the room and spoke on the telephone with her daughter.[8] Although the judge found that the defendant asked "on a couple of occasions if she should call a lawyer,"[9] significantly, in our view, the judge made no finding with respect to (and, thus, presumably, did not credit) the defendant's testimony that Trooper Murphy advised her not to do so. Finally, the defendant was not placed under arrest at the end of the interview, even though, accepting the Commonwealth's version of events, her statements would have provided probable cause to do so. See, e.g., *Commonwealth* v. *Brum*, 438 Mass. 103, 112 (2002); *Commonwealth* v. *Buckley*, 410 Mass. 209, 217 (1991); *Commonwealth* v. *McDonough*, 400 Mass. 639, 656 (1987). See also *Commonwealth* v. *Bryant, supra* at 742 n.15 (noting that nonarrest of suspect at close of

---

[8]We note that, had the tone and substance of the questioning indicated to the defendant that she was the prime suspect in the disappearance of the money, she could easily have asked her daughter to come to her assistance or to telephone a lawyer.

[9]The defendant does not assert that her questions regarding an attorney required the interview to cease. As matter of law, they did not. See *Commonwealth* v. *Girouard*, 436 Mass. 657, 666 (2002); *Commonwealth* v. *Judge*, 420 Mass. 433, 449-550 (1995). Trooper Murphy testified that, had the defendant stated that she wanted to speak to a lawyer, he and McFadden would have left.

interrogation often indicates lack of custodial atmosphere). We conclude that a reasonable person, in the defendant's position at the time she made the statements, undoubtedly might have believed that she was a suspect in the investigation into the missing lottery money. A reasonable person, however, would have known that she was free to terminate the interview and to ask the two men to leave her home. The interview was not custodial and, thus, Miranda warnings were not required.

3. The defendant's motion to suppress raised, somewhat imprecisely and indirectly, a challenge to the voluntariness of her statements. The judge made no ruling with respect to the matter in view of his conclusion that suppression was required on Miranda principles. The judge's factual findings, however, permit us to resolve the separate, but parallel, issue of voluntariness, which, unlike the determination of custody, turns on whether this particular defendant's will was overborne to the extent that her statements were not the result of a free and voluntary act. See *Commonwealth* v. *Selby*, 420 Mass. 656, 663 (1995), and cases cited; *Commonwealth* v. *Tavares*, 385 Mass. 140, 145, cert. denied, 457 U.S. 1137 (1982). The judge's findings are devoid of any indication that the investigators practiced deceit or duress. There were no threats, inducements, or promises of immunity or favor. The defendant's age and compromised health (she was seventy years old, asthmatic, and required a nebulizer during the interview to assist her breathing) suggest a degree of vulnerability, but nothing in the judge's findings, or in the record, would support a legal conclusion that her will was overborne by any coercion exerted on her by the investigators, particularly in view of the fact that she was able to provide an exculpatory version of events. See *Commonwealth* v. *Makarewicz*, 333 Mass. 575, 585-587 (1956). Although the defendant may have been "stressed by the interrogation," her physical and mental competence at the time the statements were made is unassailable. We conclude beyond a reasonable doubt that the defendant's statements to the investigators were voluntary.[10]

4. The order allowing the motion to suppress is vacated, and

---

[10]If there is a trial and voluntariness is a live issue, under our "humane practice," the jury must be instructed that "the Commonwealth has the burden

Commonwealth *v.* Sneed.

an order is to enter denying the defendant's motion to suppress. The case is remanded to the Boston Municipal Court for further proceedings consistent with this opinion.

*So ordered.*

---

of proving beyond a reasonable doubt that the statement[s were] voluntary and that the jurors must disregard the statement[s] unless the Commonwealth has met its burden." *Commonwealth* v. *Tavares,* 385 Mass. 140, 152, cert. denied, 457 U.S. 1137 (1982).