NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1049

COMMONWEALTH

vs.

ABDALLAH M. BALLA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant, Abdallah M. Balla, was convicted of one count of indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B, and one count of indecent assault and battery on a person aged fourteen or over, G. L. c. 265, § 13H. On appeal, he claims error in the order denying his motion to suppress his statements and challenges the sufficiency of the evidence to convict him of indecent assault and battery on a child under fourteen. Taking each claim in turn, we affirm.

Discussion. 1. Motion to suppress. "In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent

review of his ultimate findings and conclusions of law.'"
Commonwealth v. Fisher, 492 Mass. 823, 837-838 (2023), quoting
Commonwealth v. Medina, 485 Mass. 296, 299-300 (2020).  "The
determination of the weight and credibility of the testimony is
the function and responsibility of the judge who saw and heard
the witnesses, and not of this court."  Commonwealth v.
Gonzalez, 487 Mass. 661, 668 (2021), quoting Commonwealth v.
Neves, 474 Mass. 355, 360 (2016).  "Our appellate function
requires that we make our own independent determination on the
correctness of the judge's application of the constitutional
principles to the facts as found."  Commonwealth v. Earl, 102
Mass. App. Ct. 664, 668 (2023), quoting Commonwealth v. Groome,
435 Mass. 201, 211 (2001).

At an evidentiary hearing on the defendant's motion to
suppress, the judge heard testimony from the defendant's brother
and one of the detectives.  The judge also reviewed an audio
recording of the defendant's interview.  Ultimately, the judge
denied the motion on the grounds that the interview was not
custodial and that the defendant's statements were voluntary.
Having considered the record, we conclude that there was no
error in the judge's findings of fact, and, accordingly, we will
not disturb them.  The relevant facts are as follows.

In April 2019, a G. L. c. 119, § 51A report was filed with
the Department of Children and Families (department) alleging

2

that the defendant had sexually abused the victim.  Two Boston police detectives, Michael Condon and Joshua Cummings, went to what they believed was the defendant's home to speak with him. They were accompanied by two members of the department. Unbeknownst to the detectives, the defendant was no longer living with his family at that address.  His brother called the defendant and told him that he needed to come over to the house, and he arrived a short time later.  On his arrival, the defendant conversed in Arabic with his mother, who yelled at him.  Without prompting from the detectives, the defendant said, in English, that he would answer their questions.  The defendant sat in a chair in the living room while the detectives stood on either side of him, approximately three to five feet away.  The interview was audio recorded.

At the start of the interview, the detectives advised the defendant of his Miranda rights.[1]  The defendant was hard of hearing and at certain times the detectives asked follow-up questions when the defendant's answers sounded unclear.  The detectives clarified the defendant's Miranda rights on multiple occasions, and several times the defendant said that he understood his rights.  The detectives told the defendant he could stop the questioning at any time, and he responded,

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

"okay." The detectives asked whether the defendant understood his rights and whether he wanted to speak to them without an attorney present, to which he agreed. They then reiterated, "If you change your mind at some point . . . you feel uncomfortable, or you don't want to talk anymore, you can stop and nothing is going to happen to you for exercising that right. Do you understand all that?" The defendant replied, "Yes."

The defendant made several inculpatory statements during the interview. He admitted when he lived in Maine that he had put his penis in the victim's mouth and that he had touched her chest with his hand when they lived in Boston. He admitted he had tried to kiss the victim and that something "bad" had occurred in Maine in which he forced the victim to do something she did not want to do. Toward the end of the interview, the defendant asked, "Is this information gonna be like, between us four, five?" He said it is "too embarrassing" and asked, "What is gonna happen to me?" The defendant was advised that he was being placed under arrest and was transported to the police station for booking.

We now independently apply the law to the facts as the judge found them to determine whether the defendant's statement was elicited through custodial interrogation or was involuntary.

a. Custody. "Miranda warnings are only necessary for 'custodial interrogations.'" Commonwealth v. Kirwan, 448 Mass.

4

304, 309 (2007), quoting Commonwealth v. Jung, 420 Mass. 675, 688 (1995).  Four factors are considered in determining whether a person is in custody:

> "(1) [T]he place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest."

Groome, 435 Mass. at 211-212.  The last factor has been refined to consider "whether an officer has, through words or conduct, objectively communicated that the officer would use his or her police power to coerce [the person being questioned] to stay." Commonwealth v. Matta, 483 Mass. 357, 362 (2019).  Further, "[c]ustody must be determined based on how a reasonable person in the suspect's situation would perceive his circumstances, not on the subjective views harbored by either the interrogating officers or the person being questioned" (quotation and citation omitted).  Commonwealth v. Medina, 485 Mass. 296, 303 (2020). "The defendant bears the burden to establish the custodial nature of his or her encounter with police."  Id. at 300, citing Commonwealth v. Larkin, 429 Mass. 426, 432 (1999).  Applying the Groome factors, the judge concluded that the interview of the defendant was not custodial interrogation.  We agree.

5

The first Groome factor, the place of the interrogation, weighs against a finding of custody. The defendant's brother summoned him to the home after the detectives requested to talk to him. The defendant was interviewed in his family's living room, in a home where he used to live. See Medina, 485 Mass. at 302 ("[Q]uestioning [in a familiar setting] tends to be significantly less intimidating than questioning in unfamiliar locations" [citation omitted]). During the questioning, the defendant's brother attempted to enter the living room and the detectives motioned him away. There was no evidence that the defendant perceived his brother attempting to enter the room. The detectives did not otherwise restrict the defendant's movement, block his egress, or "dominate" the space. Id. See Kirwan, 448 Mass. at 310-311 (no custody where means of egress not blocked). Cf. Commonwealth v. Coleman, 49 Mass. App. Ct. 150, 154 (2000) (finding coercion with three officers in small room blocking exit). The detectives specifically told the defendant more than once that he was free to end the interview, which suggests he was free to leave the location. Overall, the environment was "far removed from the incommunicado interrogation of individuals in a police-dominated atmosphere for which the Miranda protections were tailored" (citation omitted). Medina, supra.

6

The second Groome factor weighs in favor of a finding of custody.  The defendant was plainly a suspect.  While the detectives did not specifically tell the defendant that he was a suspect, requesting that he come to the residence, providing him with Miranda warnings, and then questioning him about a sexual assault would have conveyed his status as a suspect to reasonable a person in his position.

The third Groome factor weighs against a finding of custody.  The detectives' questions were "investigatory rather than accusatory."  See Medina, 485 Mass. at 303.  The interview lasted a total of thirteen minutes.  The defendant volunteered to answer the detectives' questions.  The detectives did not raise their voices or shout at the defendant.  See Commonwealth v. Sneed, 440 Mass. 216, 221 (2003) (lack of shouting weighed against finding of custody).

The final Groome factor, as clarified by Matta, weighs against a finding of custody.  The interview concluded with the arrest of the defendant, but, without more, an arrest after a suspect makes an incriminating statement does not transform an interview into a custodial interrogation.  See Commonwealth v. Cawthron, 479 Mass. 612, 622 (2018).  The judge found that there was no evidence of any act or statement from either detective during the interview that would have communicated to the defendant that he would not be free to leave at the end of the

7

interview. In fact, the detectives explained multiple times that the defendant was free to terminate the interview at any time.

In light of all the circumstances, we agree with the motion judge that the defendant failed to establish that he was in custody at the time he made the incriminating statements at issue. See Medina, 485 Mass. at 301-302. Accordingly, the detectives were not required to inform him of his Miranda rights, and the validity of his waiver is not at issue. See Kirwan, 448 Mass. at 309.

b. Voluntariness. Due process requires a separate inquiry into the voluntariness of a defendant's inculpatory statements. See Commonwealth v. Weaver, 474 Mass. 787, 802 (2016), aff'd by Weaver v. Massachusetts, 582 U.S. 286 (2017), citing Commonwealth v. Siny Van Tran, 460 Mass. 535, 559 (2011). "The test for voluntariness is whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act" (quotation and citation omitted). Commonwealth v. Lopez, 485 Mass. 471, 482 (2020). Relevant factors include, but are not limited to, "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice

8

system, [and] physical and mental condition" (citation omitted).
Id. "[T]he Commonwealth must prove beyond a reasonable doubt
that . . . the will of the defendant was [not] overborne, but
rather that the statement was the result of a free and voluntary
act." Commonwealth v. Welch, 487 Mass. 425, 438 (2021), quoting
Commonwealth v. Baye, 462 Mass. 246, 256 (2012).

In the totality of the circumstances, including our own
independent review of the audio recording, we see no error in
the judge's conclusion that the Commonwealth proved beyond a
reasonable doubt that the defendant's will was not overborne.
The defendant came to the interview willingly and offered to
answer the detectives' questions unprompted. In support of his
position that his statements were not voluntary, the defendant
offered expert testimony at the motion to suppress. The expert
opined that the defendant spoke English at a "low-intermediate"
level. The judge nevertheless found that the defendant
understood the detectives' questions and responded in English
without any apparent difficulty.[2] The defendant had consumed
marijuana earlier in the day, which the judge appropriately
considered and found that it did not interfere with his ability
to communicate rationally with the detectives. "[A]n otherwise
voluntary act is not necessarily rendered involuntary simply

_____

[2] The motion judge determines the weight and credibility of
witness testimony. See Gonzalez, 487 Mass. at 668.

9

because an individual has been drinking or using drugs" (quotation and citation omitted). Commonwealth v. Weidman, 485 Mass. 679, 688 (2020). The defendant's motion to suppress the statements was properly denied.

2. Sufficiency of the evidence. The defendant moved for required findings of not guilty at the close of the Commonwealth's case and at the close of the evidence. Both motions were denied. In these circumstances, "[w]e [first] consider the state of the evidence at the close of the Commonwealth's case to determine . . . whether the Commonwealth [had] presented sufficient evidence of the defendant's guilt to submit the case to the jury" (citations omitted). Commonwealth v. Alden, 93 Mass. App. Ct. 438, 444 (2018), cert. denied, 139 S. Ct. 2010 (2019). We evaluate the sufficiency of the Commonwealth's evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

10

The elements of indecent assault and battery on a child under the age of fourteen under G. L. c. 265, § 13B, are "(1) the child was not yet fourteen years old at the time of the offense, (2) the defendant intentionally touched the child without legal justification or excuse, and (3) the touching was indecent" (citation omitted). Commonwealth v. Colon, 93 Mass. App. Ct. 560, 562 (2018). The defendant only challenges the first element and argues that the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that the victim was under the age of fourteen when the assault occurred. We disagree.

The Commonwealth's evidence that the first element was satisfied consisted primarily of the victim's trial testimony. We recount trial facts in the light most favorable to the Commonwealth. See Latimore, 378 Mass. at 676-677. A review of the victim's trial testimony reveals that she never specifically testified that she was a certain age when the assault occurred. She did, however, testify that she was born in August 2004 and that she moved to the address where the assault occurred in 2016 or 2017. She also testified that she moved back to Boston from Maine after she finished school in 2017, before she started eighth grade. She testified that the assault happened before winter, between September and November. At trial, the prosecutor asked the victim, "So when you were around [thirteen]

11

years old, did anything happen in that living room?" The victim adopted the Commonwealth's assertion that she was around thirteen by answering the question. In response to the Commonwealth's question about how old she was when she moved to the first address, the victim responded that she was "probably either [fifteen] or [fourteen]." She later clarified that she would have been twelve years old.

The defendant argues that the victim's testimony that she was fourteen or fifteen when she moved, along with the victim's general lack of clarity regarding the timeframe of the assault, is equivocal and tends equally to support that she was thirteen or fourteen when the assault occurred. See Commonwealth v. Rodriguez, 456 Mass. 578, 582 (2010) (evidence insufficient where it tends equally to support either of two inconsistent propositions). The victim's testimony that she was twelve or thirteen, however, is direct evidence of her age at the time of the assault. See Commonwealth v. Gonzalez Santos, 100 Mass. App. Ct. 1, 3 (2021) ("The sworn testimony of the victim of a sexual assault . . . is evidence of the facts asserted"). Even if the victim's testimony (though later clarified) that she was fourteen or fifteen could be considered inconsistent with the testimony that she was twelve or thirteen, such inconsistencies do not foreclose a guilty finding. Drawing the inferences in the light most favorable to the Commonwealth, sufficient

12

evidence existed for a rational jury to find that the victim was under the age of fourteen when the assault occurred.

Judgments affirmed.

By the Court (Blake, C.J.,
  Walsh & Hodgens, JJ.[3]),

*Paul Little*

Clerk

Entered:  December 23, 2024.

---

[3] The panelists are listed in order of seniority.