COMMONWEALTH *vs.* CRAIG W. CONKEY.

Middlesex. April 6, 1999. - July 30, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Evidence,* Consciousness of guilt, Admissions and confessions, Motive, Relevancy and materiality, State of mind, Impeachment of credibility, Presumptions and burden of proof, Hearsay. *Constitutional Law,* Self-incrimination, Admissions and confessions.

At the trial of a murder indictment, the judge erred in allowing the Commonwealth to introduce evidence of the defendant's "consciousness of guilt" by his initial assent and subsequent failure to appear for fingerprinting, where admission of that evidence violated the defendant's rights under art. 12 of the Massachusetts Declaration of Rights by compelling him to produce evidence against himself: a new trial was required where the error was not harmless. [141-143]

Statements a criminal defendant made to police in a noncustodial setting were not obtained in violation of his Miranda rights and were therefore admissible against him at trial. [143-145]

At a murder trial, evidence of the defendant's statement to another that he liked to break into houses when residents were inside was properly admitted as relevant to the defendant's motive and state of mind, and any prejudicial impact was minimized by the judge's limiting instructions. [145]

At a murder trial, testimony was properly admitted in evidence where it was relevant to show that the defendant was familiar with the victim, who lived nearby, and to impeach the defendant's statements to police that he had never noticed the victim in the neighborhood. [145-146]

At a murder trial, the judge did not err in refusing to admit evidence proffered by the defendant to suggest that another had committed the crime, where the evidence was not probative of the proposition. [146-147]

At a murder trial, the prosecutor's inquiry of its own expert regarding the defendant's expert's examination of fingerprint evidence was improper. [147]

At the retrial of a murder case, a redacted version of a nonprosecution agreement between the Commonwealth and one of its witnesses would be admissible with appropriate instructions. [147]

INDICTMENTS found and returned in the Superior Court Department on January 25, 1995.

A pretrial motion to suppress evidence was heard by *Margot Botsford,* J., and the cases were tried before her.

*Matthew A. Kamholtz* for the defendant.

*Eileen M. O'Brien*, Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. The defendant was convicted of murder in the first degree on all three possible bases, deliberate premeditation, extreme atrocity or cruelty, and felony-murder. The jury also found him guilty of armed burglary, armed assault in a dwelling, and armed robbery. We reverse his convictions.

During the night of December 3-4, 1994, Mary Lou Sale was killed in her home on Massachusetts Avenue in Lexington. The defendant lived four houses away on the same side of the street. When the victim failed to appear at work on December 5 and 6, fellow workers called the Lexington police. The police found Sale's partially clothed body on the floor of her bedroom with lacerations to her head and a nylon stocking around her neck. A pane of glass on the back door had been broken, and several items of personal property were missing and never recovered. The victim died from asphyxiation and multiple blunt force trauma to her head.

The police investigation first turned to the victim's landlord but expanded to a neighborhood canvass. The police spoke with the defendant, who on two occasions denied knowledge of the victim or of the murder. During the second interview, the defendant agreed that on the next day he would furnish a full set of his fingerprints, but he never appeared at the Lexington police station to do so.

On December 29, 1994, using a set of the defendant's fingerprints obtained from another source, the police made a match between a latent fingerprint on the victim's bedroom door and the defendant's left ring finger.[1] That night a State trooper and a Lexington police lieutenant interviewed the defendant at his residence. The defendant insisted that he did not know the victim and was certain that he had never been inside the victim's house. Then, after receiving Miranda warnings and advice from the police officers that they had evidence that he had been in the victim's home, the defendant ultimately admitted that he had been in the victim's home during the night of December 3-4, 1994, that he had seen and touched the victim, but that she was already dead. He said that, while on a walk, he

---

[1] Later the police matched a partial palm print found on the victim's bedroom door to the defendant.

had heard a woman scream. He broke a glass panel in the rear
door of the house from which he heard the scream, unlocked
the door, and entered the house. He saw the victim's body on a
bedroom floor and felt for a pulse. He picked up a telephone to
call the police but changed his mind and left.[2] All but one issue
raised on appeal concerns challenges to the trial judge's rulings
on evidence.

After discussing the reason for our reversal of the defendant's
convictions, we discuss issues relevant to the defendant's retrial.

1. The defendant challenges the judge's ruling that allowed
the Commonwealth over objection to introduce evidence of the
defendant's initial assent and subsequent failure to appear for
fingerprinting. During an interview with a Lexington police
detective, the defendant agreed that he would come to the
Lexington police station to provide a complete set of finger and
palm prints on the day following the interview. He appeared
neither on the next day nor at any time thereafter. The Com-
monwealth contended in its closing argument that the defen-
dant's failure to appear and provide finger and palm prints
showed the defendant's consciousness of guilt. The defendant
maintained consistently before and during trial that admission
of evidence of his failure to provide prints would violate his
right, under art. 12 of the Massachusetts Declaration of Rights,
not to be compelled to furnish evidence against himself. We
agree that the admission of evidence of his failure to appear to
provide prints violated his art. 12 rights.

We have recognized that evidence of certain conduct of a
defendant is admissible because it warrants an inference of
consciousness of guilt. See *Commonwealth* v. *Carrion*,
407 Mass. 263, 276-277 (1990); *Commonwealth* v. *Toney*,
385 Mass. 575, 583 (1982). We have also recognized that
evidence of a defendant's refusal to comply with a police
request may not be admitted because in so refusing a defendant
furnishes evidence against himself, and admission of that
evidence would violate art. 12. See *Commonwealth* v. *Hinckley*,
422 Mass. 261, 264 (1996) (refusal to turn over sneakers);
*Commonwealth* v. *McGrail*, 419 Mass. 774, 778-779 (1995)
(refusal to take field sobriety test); *Commonwealth* v. *Lydon*,
413 Mass. 309, 314-315 (1992) (refusal to submit to hand swab-
bing for evidence of gunpowder residue). See also *Opinion of*

[2]Other facts are presented in connection with our consideration of the vari-
ous issues argued on appeal.

*the Justices*, 412 Mass. 1201, 1208-1211 (1992) (statute making admissible evidence of refusal to submit to breathalyzer test would violate art. 12).[3] In such cases, a defendant is compelled to choose between two alternatives, each of which might produce evidence against him: comply with the request and provide potentially incriminating real evidence or refuse the request and have incriminating testimonial evidence of the refusal admitted at trial. *Id.* at 1211.

There are two significant aspects to the prohibition in art. 12 that a person not "be compelled to accuse, or furnish evidence against himself." First, the evidence must have a testimonial aspect. See *Commonwealth* v. *McGrail, supra* at 777. If evidence sought is real or physical evidence, such as hair and blood samples, voice exemplars, fingerprints, lineups, sobriety tests, or breathalyzer tests, art. 12 does not protect a person from having to provide such evidence. See *Commonwealth* v. *Blais*, 428 Mass. 294, 299-300 n.3 (1998); *Commonwealth* v. *Lydon*, 413 Mass. 309, 313-314 (1992); *Opinion of the Justices, supra* at 1208-1209. Although the production of such evidence is compelled, it is not testimonial and hence is not subject to art. 12 protection. *Commonwealth* v. *Blais, supra* at 300. By contrast, conduct offered to show a defendant's state of mind is testimonial. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 778 (1982). Conduct evidence admitted to show consciousness of guilt is always testimonial because it tends to demonstrate that the defendant knew he was guilty. See, e.g., *Commonwealth* v. *Fernandes*, 427 Mass. 90, 94 (1998) (threat or intimidation of potential witness); *Commonwealth* v. *Sheriff*, 425 Mass. 186, 199 (1997) (attempt to commit suicide); *Commonwealth* v. *Hinckley, supra* at 264 (refusal to turn over physical evidence); *Commonwealth* v. *McGrail, supra* at 778-779 (refusal to take field sobriety test); *Commonwealth* v. *Jackson*, 417 Mass. 830, 843 (1994) (destruction of evidence); *Commonwealth* v. *Carrion*, 407 Mass. 263, 276-277 (1990) (flight and altered appearance); *Commonwealth* v. *Basch*, 386 Mass. 620, 624 (1982) (false statements).

---

[3]The *Supreme Court of the United States has held that admission in evidence of a refusal to submit to a blood-alcohol test does not offend the Fifth Amendment to the United States Constitution. *South Dakota* v. *Neville*, 459 U.S. 553, 564 (1983). Article 12 has broader language than the Fifth Amendment and provides greater protection. See *Commonwealth* v. *Doe*, 405 Mass. 676, 678-679 (1989); *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 795-796 (1982); *Emery's Case*, 107 Mass. 172, 181 (1871).

The second consideration under art. 12 is whether the State compelled the production of the testimonial evidence. See *Commonwealth* v. *Brennan, supra.* In instances of a false alibi, fleeing the vicinity of the crime, or making false exculpatory statements, for example, compulsion is absent, and art. 12 does not bar the admission of such evidence.[4] If, however, as we have said, the defendant's conduct is testimonial and if the police, by their request, force the defendant to choose between two potentially inculpatory alternatives, the defendant's refusal to comply with that request may not be introduced against him over objection without violating art. 12. See *Commonwealth* v. *Hinckley, supra; Commonwealth* v. *McGrail, supra; Commonwealth* v. *Lydon,* 413 Mass. 309, 314-315 (1992).

Evidence of a defendant's outright refusal to provide fingerprints to the police may not be admitted as evidence of consciousness of guilt because, as we have just discussed, art. 12 forbids it. This case involves such a refusal. The fact that the defendant first agreed to provide prints and then failed to do so does not eliminate the compulsion. The defendant had only two alternatives, each of which could be adverse to his interests. Because there was governmental compulsion, admission of evidence that the defendant did not appear at the police station to be fingerprinted violated his art. 12 rights. The error cannot fairly be said to have been harmless.

2. Certain statements that the defendant made to police were not obtained in violation of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), and, therefore, are admissible against him.

On December 29, 1994, police matched a fingerprint of the defendant to a latent fingerprint found in the victim's bedroom. At approximately 8 P.M. the same day, State Trooper Sennott and Lexington police Lieutenant Corr, dressed in plain clothes, went to the defendant's home. The defendant's landlord directed them to the defendant's room on the third floor. The officers knocked on the door and the defendant said, "Hello, come in." The officers identified themselves and, noting that the defendant was undressed, asked him to get dressed. The defendant shut the door and reopened it after about thirty seconds, now dressed, and invited the officers into his room. For about ten minutes, and without giving the defendant Miranda warnings, the officers

---

[4]In unusual situations the purported consciousness of guilt evidence may be the result of duress or some other compulsion. We do not consider such circumstances.

asked the defendant questions about the victim and whether he had ever been in her home. After the defendant had repeatedly stated he had never been in her home, the officers gave the defendant Miranda warnings. Subsequently, the defendant stated that he had indeed been inside the home on the night of the killing, but that the victim was already dead when he arrived.

The defendant asserts that the initial encounter was custodial and that that interrogation violated his Miranda rights. When a defendant is in custody, any statement by the defendant elicited by police interrogation is inadmissible unless it is preceded by Miranda warnings. *Commonwealth* v. *Haas*, 373 Mass. 545 (1977), *S.C.*, 398 Mass. 806 (1986). The factors relevant to determining whether a suspect is in custody for Miranda purposes include the place of interrogation, the aggressiveness of the interrogation, and whether the suspect is free to end the interview. See *Commonwealth* v. *Morse*, 427 Mass. 117, 124-127 & n.6 (1998); *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984). The basic inquiry is whether, from the point of view of the defendant, the interrogation took place in a coercive environment. *Commonwealth* v. *Bryant, supra* at 736. See *Commonwealth* v. *Morse, supra* at 126 (undisclosed belief of interrogator and whether person interviewed is suspect is immaterial). In reviewing a motion judge's decision, we give substantial deference to the judge's ultimate findings of fact and conclusions of law, but we independently apply the constitutional principles to the facts found. *Commonwealth* v. *Morse, supra* at 122, and cases cited.

The initial interview of the defendant took place in the familiar surroundings of his residence and with his acquiescence. See *Breese* v. *Commonwealth*, 415 Mass. 249, 255-256 (1993) (interview at defendant's home noncustodial); *Commonwealth* v. *Bryant, supra* at 736-737 (same). The defendant was familiar with the State trooper, who had interviewed him previously, and the tenor of the interview was not aggressive. A reasonable person in the defendant's position may have believed, based on prior interviews, that he was a suspect of the investigation. However, a reasonable person would conclude that he was free to terminate the interview or ask the police to leave the place of questioning. Weighing the relevant factors, we conclude that the initial encounter did not occur in a coercive environment. The judge did not err in admitting the defendant's statements. Because there was no violation of the defendant's rights, none

of his post-Miranda statements was tainted. See *Commonwealth* v. *Smith*, 412 Mass. 823, 836-837 (1992).

3. The defendant challenges the admission of testimony from two witnesses, Barbara Tucker and Justine Moon. He argues that the judge erroneously admitted Tucker's testimony that the defendant had told her that he liked to break into homes when residents were present. The judge ruled, over objection, that this testimony was admissible as probative of the defendant's state of mind, intent, or motive. The defendant contends that this testimony was inadmissible character evidence and, alternatively, that its prejudicial effect outweighed its probative value.

Evidence may not be admitted to prove the propensity of an accused to commit the crime charged. That same evidence may be admissible, however, for other relevant purposes. See *Commonwealth* v. *Martino*, 412 Mass. 267, 280 (1992); *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). Evidence of motive is generally admissible. *Commonwealth* v. *Weichell*, 390 Mass. 62, 73 (1983) ("the Commonwealth is entitled to introduce all relevant evidence of motive"), cert. denied, 465 U.S. 1032 (1984). *Commonwealth* v. *Borodine*, 371 Mass. 1, 8 (1976) ("if there is evidence of motive, that evidence is admissible"), cert. denied, 429 U.S. 1049 (1977). "Determination of the weight of [motive] evidence is for the jury, and evidence which merely suggests rather than 'clearly shows' a motive for the crime may still be ruled admissible. There is no requirement that evidence be conclusive in order to be admissible." *Commonwealth* v. *St. Germain*, 381 Mass. 256, 271 (1980).

The Commonwealth's theory was that the defendant entered the victim's home on the night of the killing in order to steal her jewelry and personal belongings while she was home. Tucker's testimony was plainly relevant to the defendant's motive or state of mind. Whether the probativeness of this evidence outweighed any prejudicial effect is a matter for the judge's sound discretion. See *Commonwealth* v. *Maldonado*, 429 Mass. 502, 504 (1999); *Commonwealth* v. *Gunter*, 427 Mass. 259, 263 (1998); *Commonwealth* v. *St. Germain, supra*. The judge carefully reviewed the proffered evidence and excluded some of it. She minimized the prejudicial impact by giving a limiting instruction concerning the purpose for which the evidence could be considered. There was no error.

The defendant also asserts that the judge erred in allowing

Justine Moon to testify that the defendant would stare at her as she waited at the bus stop in front of his house. The defendant contends that this testimony served no purpose other than to portray him as a "menacing and creepy" character. The Commonwealth presented evidence that both the victim and the defendant frequented a cluster of stores near their residences. The prosecution offered Moon's testimony as tending to contradict the defendant's assertion to the police that he had never noticed the victim when she visited those stores. The testimony was relevant to show that the defendant was familiar with the victim and to impeach his credibility in his statements to the police. The judge committed no error in admitting the evidence.

4. The defendant argues that the judge improperly excluded evidence that the victim's neighbor and landlord had once committed a similar act, had refused to submit to DNA and polygraph tests, and had nylon stockings in his home. There was no error.

"A defendant may 'introduce evidence that another person recently committed a similar crime by similar methods, since such evidence tends to show that someone other than the accused committed the particular crime.' *Commonwealth* v. *Jewett*, 392 Mass. 558, 562 (1984). A defendant may do so, however, only where 'the acts of the other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] defendant as the person who committed the crime." *Commonwealth* v. *Hunter*, 426 Mass. 715, 716-717 (1998), quoting *Commonwealth* v. *Keizer*, 377 Mass. 264, 267 (1979). See *Commonwealth* v. *Murphy*, 282 Mass. 593, 597-598 (1933). When the defendant offers such evidence, and it is "of substantial probative value, and will not tend to prejudice or confuse, all doubt should be resolved in favor of admissibility." *Commonwealth* v. *Keizer, supra,* quoting *Holt* v. *United States*, 342 F.2d 163, 166 (5th Cir. 1965). We do not, however, disturb a trial judge's decision to admit or reject such evidence unless justice requires a different result. See *Commonwealth* v. *Scott*, 408 Mass. 811, 816 (1990); *Commonwealth* v. *Keizer, supra*; *Commonwealth* v. *Murphy, supra* at 598.

The points of similarity between the present case and the crime allegedly committed by the victim's landlord are few. In the present case, the primary motive appeared to be burglary

and larceny. By contrast, the prior crime alleged to have been committed by the landlord was a sexual assault with evidence of rape and the taking of sexually explicit photographs. The prior incident had occurred seven years before the victim's killing. The two crimes are sufficiently dissimilar that the judge did not err in excluding the evidence.

The judge also did not abuse her discretion in excluding evidence that the landlord had initially assented to DNA and polygraph testing and then had withdrawn his consent and refused to submit to those tests. The defendant contends that this evidence was relevant to the landlord's consciousness of guilt and necessary to correct misleading testimony. The evidence was collateral to the landlord's motive or opportunity to commit the crime. The judge did not err in ruling that such evidence was insufficiently probative to be admissible.

Lastly, there was no error in the judge's decision to exclude testimony that women's nylons were found in the landlord's residence. There was no connection between those nylons and that used as the ligature on the victim.

5. We briefly discuss the defendant's other arguments that may be material at any retrial. (a) Over objection, the prosecutor was permitted, on redirect examination, to obtain from its fingerprint expert a statement that various evidentiary items had been made available to the defendant's expert but that she did not know if the defendant's expert had examined them. There is in this statement a suggestion, however slight, of an improper shifting of the burden of proof to the defendant. See *Commonwealth* v. *Bryer*, 398 Mass. 9, 12 (1986). The statement should not be admitted at the defendant's retrial. (b) The prosecutor properly may ask the jury to conclude, based on the evidence, that the defendant lied in his statements to the police. See *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994). (c) The admission of a redacted version of the nonprosecution agreement between the Commonwealth and the witness Barbara Tucker would be proper. Such an agreement, properly redacted and accompanied by appropriate instructions, is admissible. *Commonwealth* v. *Ciampa*, 406 Mass. 257, 261 (1989). See *Commonwealth* v. *Rivera*, *ante* 91, 96 (1999). The signature of Tucker's lawyer, as well as those of the Commonwealth's attorneys, should be deleted from the agreement because they could be viewed as hearsay statements that they believed Tucker was telling the truth. *Ciampa*, *supra* at 262-263.

Accordingly, the judgments are reversed, the verdicts set aside, and the cases remanded to the Superior Court for a new trial.

*So ordered.*