## COMMONWEALTH *vs.* JOHN DELANEY.

Suffolk. January 8, 2004. - September 2, 2004.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Constitutional Law,* Self-incrimination. *Evidence,* Consciousness of guilt, Admissions and confessions, Cross-examination. *Constitutional Law,* Self-incrimination, Admissions and confessions. *Search and Seizure,* Body examination, Warrant. *Practice, Criminal,* Instructions to jury. *Assault with Intent to Murder. Assault with Intent to Kill.*

This court concluded that evidence of a criminal defendant's resistance to, or refusal to comply with, a warrant or court order could be introduced at trial without violating art. 12 of the Massachusetts Declaration of Rights, as such evidence was not "compelled" within the meaning of art. 12. [607-612]

Introduction of certain consciousness of guilt evidence at a criminal trial, even if erroneous, did not prejudice the defendant, in light of the far more explicit consciousness of guilt evidence presented to the jury, the lack of reference to the evidence in the prosecutor's closing argument, and the judge's instructions focusing the jury's attention on the more explicit consciousness of guilt evidence in the case. [612-614]

A criminal defendant failed to demonstrate that the trial judge erred in her instructions to the jury on the elements of both assault with intent to murder and the lesser included offense of assault with intent to kill [614-615]; further, no substantial risk of a miscarriage of justice stemmed from the judge's erroneous definition of a "dangerous weapon," where it was undisputed at trial that the weapon at issue (a pocket knife) was used in a manner to inflict serious bodily harm [615].

A criminal defendant failed to demonstrate that the prosecutor's two improper questions during cross-examination at a criminal trial materially influenced the verdicts. [615-616]

INDICTMENTS found and returned in the Superior Court Department on May 16, 1997.

The cases were tried before *Elizabeth B. Donovan,* J., and a motion for a new trial, filed on October 5, 2000, was heard by her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*David J. Nathanson,* Committee for Public Counsel Services, for the defendant.

*Donna Jalbert Patalano,* Assistant District Attorney, for the Commonwealth.

SOSMAN, J. The defendant was convicted of armed assault with intent to kill (on an indictment charging armed assault with intent to murder) and assault and battery by means of a dangerous weapon. On direct appeal and in his motion for a new trial, the defendant asserted numerous errors, in particular a claim that his rights under art. 12 of the Massachusetts Declaration of Rights had been violated when the prosecutor introduced evidence of his "refusal" to submit to a body search warrant. See *Commonwealth* v. *Conkey,* 430 Mass. 139, 142 (1999), and cases cited. His motion for a new trial was denied. In an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court affirmed the convictions, and affirmed the order denying the defendant's motion for a new trial. *Commonwealth* v. *Delaney,* 58 Mass. App. Ct. 1109 (2003). We granted the defendant's application for further appellate review, and we now affirm the convictions and the denial of the motion for a new trial.

1. *Background.* We summarize the evidence introduced at trial, reserving certain particulars for discussion in conjunction with the issues raised. On the afternoon of October 18, 1996, the defendant, working for a courier service, drove to a downtown Boston office building to make a delivery of two large packages. He was accompanied by a fellow employee, who waited outside in the vehicle while the defendant proceeded into the building to take the packages to a customer on the thirty-seventh floor. On his way in, the defendant accidentally collided with the victim, John Henderson, resulting in a heated exchange of words between the two. The defendant headed toward the bank of elevators, with an angry Henderson in pursuit. When the defendant got into an elevator, Henderson attempted to block the doors; the defendant kicked or shoved Henderson out; Henderson charged back into the elevator; and a fight ensued as the doors closed and the elevator lifted off.

What transpired during the course of that altercation in the elevator was hotly contested. Henderson's version was that

after he landed a few blows, the defendant pulled out a knife and stabbed him multiple times. Henderson was stabbed in his upper abdomen, lower abdomen, right arm, scalp, and left hand. Henderson attempted to grab the blade and thereby stop the attack, and he bit the defendant's shoulder in an unsuccessful attempt to make the defendant drop the knife. When the elevator stopped on the thirty-seventh floor, Henderson escaped and rushed to the nearest office to seek help. The defendant did not follow him. Although one of Henderson's abdominal wounds was life threatening, he did survive.

The defendant's version of the altercation in the elevator was that Henderson had him pinned and was repeatedly banging his (the defendant's) head against the wall. Due to a prior injury and reconstructive surgery to his face and skull, the defendant was especially fearful of reinjury and, as he began "seeing stars," was in fear for his life.[1] He pulled out his small utility knife and stabbed Henderson several times, but Henderson's attack persisted throughout. He recalled Henderson grabbing at the blade and biting him in the shoulder. Henderson did not relent until the elevator doors opened.

After Henderson departed, the defendant did not proceed with his delivery of packages, but instead returned to the ground floor and, without reporting the altercation or stabbing to anyone, walked to the vehicle where his coworker was waiting. As the defendant approached, "winded and dizzy," he took off his jacket and threw it in the back of the vehicle.[2] The coworker asked the defendant what happened. The defendant replied that he had been unable to deliver the packages because the customer was not in her office to receive them. He said nothing about any altercation or stabbing, made no complaint about any injury to his head, and sought no medical attention. He continued with

[1] The defendant's doctor testified, confirming that the defendant had been treated for skull fractures six years earlier, requiring the insertion of a steel plate. The doctor warned patients with this type of injury "that they must take great care to avoid having recurrent trauma to that area because that area having had a fracture is at greater risk for being refractured."

[2] From the fact that Henderson had been covered in blood, the jury could infer that the jacket was bloodstained and that the defendant was attempting to conceal it from his coworker.

his delivery route for the rest of the day, and made additional deliveries substituting for other couriers.

That night, the defendant camped out on an island in Boston Harbor, and left the knife on the island. When the defendant returned to work the following Monday, a supervisor asked him whether he knew anything about a stabbing that had occurred on his delivery route.[3] The defendant claimed that he knew nothing about the incident. He continued to work on Monday and Tuesday, and then called in sick for the next three workdays.

Meanwhile, the police were looking for the defendant in his usual haunts, but were initially unable to find him. On October 30 (twelve days after the incident), they obtained a warrant from the Suffolk Superior Court to search the defendant for any bite marks. Later that same day, three officers went to the defendant's workplace, where they found him and presented him with the warrant. One of the officers told him that the warrant authorized them to take him to the police station to be examined by a physician. The defendant began to accompany the officers out of the building, but then asked them whether he was "under arrest," to which one of the officers replied, "no." The defendant then started to walk away from the officers. The officers stopped him, handcuffed him, and proceeded to take him to the station. There he was examined, and a bite mark on his left shoulder was photographed.

2. *Discussion.* a. *Refusal evidence under art. 12.* The defendant claims that evidence of his walking away from the officers as they were executing the body search warrant was improperly introduced as "consciousness of guilt" evidence, in violation of his art. 12 right not to "be compelled to accuse or furnish evidence against himself." See *Commonwealth* v. *Conkey*, 430 Mass. 139, 142 (1999); *Commonwealth* v. *Hinckley*, 422 Mass. 261, 265 (1996); *Commonwealth* v. *McGrail*, 419 Mass. 774, 779-780 (1995); *Commonwealth* v. *Lydon*, 413 Mass. 309, 313-315 (1992); *Opinion of the Justices*, 412 Mass. 1201, 1207-1211 (1992). We conclude that there was no error, as

---

[3]The supervisor had seen a news report describing the incident, and recognized the address as one of the defendant's delivery locations.

evidence of a defendant's resistance to a warrant or court order may be introduced without violating art. 12.[4]

Article 12 provides in part that no person "shall be compelled to accuse, or furnish evidence against himself." As explained in *Opinion of the Justices, supra* at 1208-1209, evidence of a defendant's "refusal" to submit to testing or examination is testimonial in nature. There, the court was examining a proposed bill that would have made a driver's refusal to consent to breathalyzer testing admissible in evidence. Although the test itself would yield only physical evidence that is not protected by art. 12, a defendant's refusal to participate in testing would be proffered as an implied admission of guilt, or at least of the defendant's fear that the test results would prove incriminating. *Id.* See *Commonwealth* v. *Conkey*, 430 Mass. 139, 142 (1999), and cases cited ("evidence admitted to show consciousness of guilt is always testimonial because it tends to demonstrate that the defendant knew he was guilty"). It is thus a form of self-accusation, or a furnishing of testimony against oneself, that may not be compelled.

The prohibited element of compulsion, the court reasoned, arises when the defendant is given a choice whether to submit to the testing.[5] "There is compulsion, therefore, on the accused to choose between two alternatives, both of which are capable of producing evidence against him. The proposed statute,

---

[4]The defendant acknowledges that although he objected to the introduction of this evidence at trial, his objection was not based on the art. 12 theory he now presents. Seeking to elevate our standard of review of this unpreserved claim of constitutional error, he contends that the judge "resurrected" it when she addressed the merits of the argument in ruling on his motion for a new trial. See *Commonwealth* v. *Hallet*, 427 Mass. 552, 553-555 (1998). Because we find no merit to the claim of constitutional error, we need not consider what standard we would use to decide whether such an error would have required a new trial, and thus do not need to parse the judge's decision with respect to whether she "resurrected" this previously waived claim. That exercise, were we to undertake it, would highlight some of the anomalies in our doctrine of issue "resurrection" — it appears that the judge mistakenly thought that the constitutional issue was preserved, and thus addressed its merits without any caveat that she nevertheless viewed the claim as waived. It would be odd to conclude that a judge's erroneous assumption that a claim of error was preserved would operate to "resurrect" a claim that was not in fact preserved.

[5]Both breathalyzer and blood alcohol testing require the consent of the ʳer, who must be warned of the consequences of refusing the test. G. L.

therefore, uses the threat of adverse testimonial evidence as a coercive tool to compel submission to a breathalyzer test. The accused is thus placed in a 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *Opinion of the Justices, supra* at 1211. Because the defendant in such a scenario would be required to say or do something to announce his choice, the proposed bill would have had the effect of forcing a defendant to make a potentially incriminating statement, thereby violating art. 12.[6] It is the very element of giving the suspect a choice that creates the compulsion prohibited by art. 12. "[I]f the police, by their request, *force the defendant to choose between two potentially inculpatory alternatives,* the defendant's refusal to comply with that request may not be introduced against him over objection without violating art. 12" (emphasis added). *Commonwealth* v. *Conkey, supra* at 143.

The same reasoning has applied to exclude evidence of a defendant's refusal to participate in a field sobriety test, *Commonwealth* v. *McGrail,* 419 Mass. 774, 779-780 (1995); evidence of a defendant's refusal to let his hands be swabbed for the presence of gunpowder residue, *Commonwealth* v. *Lydon,* 413 Mass. 309, 313-315 (1992); evidence of a defendant's refusal to turn over sneakers for comparison with prints at a crime scene, *Commonwealth* v. *Hinckley,* 422 Mass. 261, 264-267 (1996); and evidence of a defendant's failure to appear at a police station for fingerprinting, *Commonwealth* v. *Conkey, supra* at 141-143.

However, none of the above cases involved a defendant's refusal to comply with a warrant or court order. Once a warrant or court order has been obtained, a suspect has no "choice" but to comply with it. Nothing is compelling the suspect to say

c. 90, § 24 (1) (*e*), (1) (*f*) (1). See *Commonwealth* v. *Sabourin,* 48 Mass. App. Ct. 505, 506 (2000), and cases cited.

[6]Evidence of refusal to submit to such testing is not violative of the Fifth Amendment to the United States Constitution, as the Supreme Court has held that there is no compulsion involved in such a refusal. *South Dakota* v. *Neville,* 459 U.S. 553, 562-564 (1983). In analyzing art. 12, this court rejected that rationale and concluded that there was compulsion. *Opinion of the Justices,* 412 Mass. 1201, 1210-1211 (1992).

anything, or putting the suspect in the "Catch-22" situation identified in *Opinion of the Justices, supra* at 1211. Instead, the suspect is being compelled to produce the physical evidence in question, or compelled to submit to the test for physical evidence, a form of compulsion that does not violate either art. 12 or the Fifth Amendment to the United States Constitution. See *Commonwealth* v. *Conkey, supra* at 142, and cases cited. There is no "compulsion" to resist the warrant or court order — in the absence of any option whether to comply, the police are not pressuring the suspect into furnishing any testimonial consciousness of guilt evidence.

The fact that a defendant does not have a Fifth Amendment or art. 12 "right" to refuse to submit to testing for physical evidence does not make police requests for such testing the equivalent of warrants or court orders. While the underlying physical evidence itself has no substantive constitutional protection, a suspect still has rights afforded by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights that are implicated in police requests to submit to testing that will produce such evidence, and a suspect may lawfully refuse to submit to such testing unless and until the police make the requisite showing and obtain a warrant or court order. See *Commonwealth* v. *Maxwell,* 441 Mass. 773, 777-778 (2004) (summarizing requirements for warrants and orders for physical testing of suspects at different stages of investigation and prosecution). When, in the absence of a warrant or court order, the police request that a suspect voluntarily submit to testing or voluntarily turn over physical evidence, that suspect still has the option of refusing to do so, as the suspect may lawfully insist that the police take the steps necessary to obtain a warrant. Evidence that a suspect has declined such a request runs afoul of art. 12 in the manner outlined in *Opinion of the Justices, supra* — the suspect is being compelled to make a choice between waiving his Fourth Amendment and art. 14 rights or asserting them and having that consciousness of guilt evidence used against him. In such a situation, introducing evidence of the defendant's refusal would violate art. 12 and, at the same time, would impermissibly

penalize a defendant for asserting other constitutional rights. Constitutional rights "would be of little value if the price for [their] exercise is the risk of an inference of guilt." *Commonwealth* v. *Burke*, 339 Mass. 521, 533 (1959), rev'd on other grounds, *Commonwealth* v. *Beldotti*, 409 Mass. 553 (1991).

However, consciousness of guilt that is displayed in response to a warrant or court order is not, in any sense, compelled, nor would introduction of such evidence place a burden on any constitutional right. At that point, a suspect has no lawful option but to comply with the warrant or order itself — the suspect has no further right to refuse compliance, and no right is being burdened by the insistence that the suspect submit to the warrant.[7] Thus, for example, art. 12 does not prevent the admission of evidence that a suspect fled, or refused entry, in response to the arrival of police armed with a search or arrest warrant. See, e.g., *Commonwealth* v. *Pratt*, 407 Mass. 647, 649, 652 n.7 (1990) (suspect's delay in opening door after police announced they were there with warrant could be considered consciousness of guilt); *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 402-403, 410 (1989) (defendant's retreat to closet when officers entered with search warrant allowed inference of consciousness of guilt); *Commonwealth* v. *Nova*, 50 Mass. App. Ct. 633, 634, 636 (2000) (proper for prosecutor to suggest consciousness of guilt based on defendant's running out rear of building when police announced they were there with arrest warrant). By comparison, a suspect's declining a police request to search his home, or declining a request to accompany police to the station, is not admissible as consciousness of guilt — the police may not put a suspect on the spot by asking him to waive a right, and then introduce testimonial evidence of his refusal in the event that he asserts that right. Having obtained a warrant or court order, however, the police may then execute that warrant or order, and the suspect's behavior or statements exhibiting

---

[7]Claimed defects in the warrant, if any, would be handled in a later motion to suppress. They would not comprise a basis for resisting the warrant at the time of its execution. Here, the defendant makes no claim that the warrant itself was improperly issued.

resistance to that warrant or order may be admitted without violating art. 12.[8]

Here, the police had obtained a warrant to examine the defendant for evidence of injuries incurred during the altercation with Henderson. Refusal to comply with that warrant, or resistance to that warrant, was not "compelled" within the meaning of art. 12, and introduction of evidence pertaining to that refusal or resistance did not violate the defendant's art. 12 rights.

b. *Unfairness in introducing refusal evidence.* In addition to his constitutional argument, the defendant contends that it was "fundamentally unfair" to introduce evidence of his refusal to accompany the police because he mistakenly believed at the time that he did not have to accompany them. He had started to leave the building with the officers, but then asked them whether he was "under arrest." The officer's negative answer was technically correct (as the defendant was not "under arrest" on any charge), but the defendant misinterpreted that answer to mean that he did not have to go with the officers. Given that the defendant's misinterpretation was itself understandable, he contends that it was unfair to introduce his behavior as consciousness of guilt evidence. The defendant's objection to this evidence at trial was phrased in somewhat amorphous terms, but generally protested the unfairness of introducing this evidence when he had been "misled" into believing that he did not have to accompany the officers. We will therefore treat this claim as preserved and apply a standard of prejudicial error. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13-14 n.7 (1999), quoting *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994).

We need not resolve whether, on these unusual facts, the

---

[8]In analyzing this issue on the motion for a new trial, the judge relied on *Commonwealth* v. *Brown*, 24 Mass. App. Ct. 979 (1987). In that case, the Commonwealth had been allowed to introduce evidence of the defendant's resistance to a court order requiring him to provide hair, saliva, and blood samples. The defendant correctly points out that the *Brown* analysis relies on the theory that such a refusal is not "testimonial" in nature, a theory that this court later rejected in *Opinion of the Justices*, 412 Mass. 1201, 1208-1209 (1992). While the analysis in *Brown* is now outdated, its holding is still correct. The evidence was "testimonial," but the defendant in *Brown* was not "compelled" to provide that testimony.

evidence should have been excluded on the grounds asserted at trial, as we are satisfied that the introduction of this evidence, even if erroneous, resulted in no prejudice to the defendant. Far more explicit consciousness of guilt evidence was presented to the jury, specifically, the defendant's lying to his coworker in the immediate aftermath of the incident and denying any knowledge of the incident when questioned by his supervisor several days later.[9] Well before the defendant's refusal to accompany the police, the defendant had repeatedly exhibited a desire to cover up his involvement in the incident. That the Commonwealth was allowed to introduce yet another example of the defendant's consciousness of guilt, even if erroneous, had no influence or "but very slight effect" on the jury's assessment of the evidence. *Commonwealth* v. *Flebotte, supra* at 353, quoting *Commonwealth* v. *Peruzzi,* 15 Mass. App. Ct. 437, 445 (1983).[10]

Moreover, the prosecutor's closing argument made no reference to the defendant's refusal to accompany the officers, and the judge's instruction on consciousness of guilt was expressly directed to "evidence that the defendant may have intentionally made certain false statements about this particular incident," pointing out that "there may be numerous reasons why an innocent person may lie" and that "evidence of lying is never enough to convict a person of a crime." Given this pointed instruction focusing the jury's attention on the more explicit consciousness of guilt evidence in the case, it is particularly unlikely that the refusal evidence had any role in their assessment of the defendant's consciousness of guilt. See *Commonwealth* v. *Vermette,* 43 Mass. App. Ct. 789, 797-799 (1997)

[9]His hiding the presumably bloodstained jacket from his coworker, his abandoning the knife on an island, and his absence from his usual haunts in the aftermath of the incident would also suggest consciousness of guilt.

[10]The defendant suggests that because there was extensive evidence on the issue of self-defense, any trial error would automatically equate to prejudicial error. That approach misapplies the prejudicial error standard. If, as here, the alleged error resulted in the admission of cumulative evidence on a point that had already been abundantly proved by other evidence, the fact that other aspects of the case were arguably close does not make that error prejudicial. The consciousness of guilt evidence introduced at this trial was overwhelming, even though the evidence with regard to justification for the defendant's use of force, and whether the degree of force used was excessive, was mixed.

(where defendant acknowledged his presence at crime scene, and evidence of refusal to let police search vehicle or photograph footwear was not referenced in closing argument or instructions, error in admitting refusal evidence was harmless beyond reasonable doubt).

c. *Jury instructions.* The judge gave correct instructions on the elements of the crime of assault with intent to murder and the lesser included offense of assault with intent to kill. During her instructions on self-defense and excessive use of force in self-defense, the judge made a cross-reference to her earlier instructions, indicating that if the Commonwealth had proved beyond a reasonable doubt that the defendant used excessive force in self-defense, "then you would find him guilty of armed assault with intent to kill because that excessive force is one of the mitigating factors that I have previously defined for you which reduces the crime of armed assault with intent to murder to the lesser-included offense of armed assault with intent to kill." Having made no objection to this language at the time,[11] the defendant now claims that instructing the jury that they "would find him guilty of armed assault with intent to kill" if excessive force were proved allowed the jury to convict the defendant of armed assault with intent to kill without establishing the requisite intent to kill. The argument is specious. The judge's instruction on the underlying elements, given both during her original charge and again when the jury requested further instruction, repeatedly and unambiguously included specific intent to kill as one of the elements that had to be proved for both the offense as charged and the lesser included offense. That the judge's single cross-reference to an earlier portion of

---

[11]The defendant objected to the judge's refusal to use the word "malice" in the instruction on assault with intent to murder, and refusal to instruct as to the "absence of malice" with respect to the crime of assault with intent to kill. For purposes of these crimes, "malice" refers only to the absence of any justification, excuse, or mitigation. *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-131 (1989), citing *Commonwealth* v. *Henson*, 394 Mass. 584, 591 (1985). The judge properly defined the Commonwealth's burden to prove the absence of any mitigating circumstance in order to convict the defendant of the offense as charged, and correctly instructed the jury that they should consider the lesser included offense of assault with intent to kill if the Commonwealth failed to prove the absence of any mitigating circumstance.

her charge did not repeat that entire earlier portion would not cause the jury to ignore one of the identified elements.[12]

The defendant also claims error in the judge's instruction that "a knife does constitute a dangerous weapon." A pocket knife of the type the defendant described is not a dangerous weapon per se, as it is not "designed for the purpose of bodily assault or defense," *Commonwealth* v. *Appleby*, 380 Mass. 296, 303 (1980), and the instruction was therefore erroneous. However, there was no objection at trial, and we consider only whether the error posed a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). It did not. It was undisputed at trial that the defendant used the knife to inflict multiple stab wounds on the victim, including two stab wounds to the abdomen. Whatever the nature of the knife in question, it was admittedly used in a manner to inflict serious bodily harm, and thus was used as a dangerous weapon. *Commonwealth* v. *Appleby*, *supra* at 304-305. The sole issue at trial was whether there was justification for the defendant's resort to a dangerous weapon, or circumstances that would mitigate his resort to that weapon. There was no dispute that the knife, as used, qualified as a dangerous weapon, and therefore no substantial risk of a miscarriage of justice stemming from the judge's erroneous definition of "dangerous weapon."

d. *Cross-examination of the defendant.* The defendant contends that the prosecutor's cross-examination improperly questioned him about his postarrest silence, his failure to provide the police with the knife, and his failure to provide the police with his own photographs of the bite mark on his

[12]The defendant also contends that the judge's instruction "misstated the burden of proof" with respect to the use of excessive force in self-defense. There was no error. For purposes of the crime as charged, assault with intent to murder, the Commonwealth had to prove the absence of any mitigation, and the judge properly included "excessive force in self-defense" as a mitigating circumstance that the Commonwealth would have to disprove in order to convict the defendant of the crime as charged. *Commonwealth* v. *Nardone*, *supra*. The defendant acknowledges that as part of her later instruction on self-defense, the judge correctly instructed the jury that the burden was on the Commonwealth to prove that the defendant did not act in self-defense, and that, for purposes of finding him guilty of assault with intent to kill, the Commonwealth would therefore have to prove that the defendant used excessive force in self-defense.

shoulder. No timely objections were made. With respect to the defendant's postarrest silence, it was defense counsel — not the prosecutor — who elicited the defendant's testimony that he had refused to talk to the police. The prosecutor's questions went to the issue whether the defendant had ever spoken with the prosecutor, an inquiry that was justified by the defendant's testimony giving the erroneous impression that they had spoken before trial.

With respect to the defendant's failure to produce two items of physical evidence (the knife and the photographs), both questions were improper. See *Commonwealth* v. *Martinez*, 34 Mass. App. Ct. 131, 132-133 (1993), and cases cited. However, the one improper question about the knife (asking the defendant if he had ever shown the knife to the police) was sandwiched in amongst permissible questions about the defendant's failure to bring the knife to trial.[13] It was also improper for the prosecutor to ask the defendant whether he had shown the police the photographs he had taken of the bite mark five days after the incident.[14] However, both Henderson and the defendant testified that Henderson had bitten the defendant's shoulder during the fight in the elevator (making the point uncontested), and the defendant himself introduced one of the pictures in evidence (thereby expressing the view that the photographic evidence was helpful, not harmful, to his defense). We are satisfied that these two improper questions did not materially influence the verdicts. *Commonwealth* v. *Alphas*, *supra*, quoting *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

*Judgments affirmed.*

*Order denying motion for a new trial affirmed.*

---

[13]The defendant had described the knife as both small and "very dull," presumably in an attempt to refute the inference of an intent to kill. His failure to produce evidence at trial that would corroborate his claim with respect to the size and condition of the knife is a proper subject of inquiry. See *Commonwealth* v. *Ivy*, 55 Mass. App. Ct. 851, 859-860 (2002), and cases cited.

[14]The defendant replied that he had not done so because the photographs had not been developed at that time.