# United States Court of Appeals

## For the First Circuit

_____

No. 07-1526

JOHN DELANEY,

Petitioner/Appellant,

v.

LINDA BARTEE, SUPERINTENDENT,
SOUZA BARANOWSKI CORRECTIONAL FACILITY,

Respondent/Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

_____

Before

Boudin, Chief Judge.

Wallace,[*] Senior Circuit Judge,

and Howard, Circuit Judge.

_____

David J. Nathanson, Committee for Public Counsel Services, for petitioner/appellant.

Jonathan M. Ofilos, Assistant Attorney General, and Martha Coakley, Attorney General, on brief, for respondent/appellee.

_____

April 4, 2008

_____

_____

[*] Of the Ninth Circuit, sitting by designation.

**WALLACE, Senior Circuit Judge.** John Delaney appeals from the district court's order denying his habeas corpus petition. He argues that the prosecutor violated his constitutional rights under *Doyle v. Ohio*, 426 U.S. 610 (1976), by commenting on his decision to remain silent after arrest. The district court held that his claim was procedurally defaulted under the Massachusetts contemporaneous objection rule and therefore not subject to habeas review. On appeal, Delaney argues (1) that his claim was not procedurally barred, and (2) that the state court's decision on the merits was contrary to or an unreasonable application of Supreme Court law. Delaney presents a colorable argument as to each of these claims. But the decisive issue before us is whether he has failed to demonstrate that the prosecutor's comments "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (internal quotation marks omitted), *quoting Kotteakos v. United States*, 328 U.S. 750, 776 (1946).

**I**

On Friday, October 18, 1996, Delaney was delivering packages to an office building in downtown Boston. As he entered the lobby of the building, he collided with John Henderson, and the two men began arguing. As Delaney made his way to the elevator, the argument escalated and a physical altercation ensued inside the closed elevator. At some point, as the elevator rose to the 37th

-2-

floor, Delaney drew a knife and stabbed Henderson several times. When the elevator came to a stop and the doors opened, Henderson stumbled out and called for help, while Delaney rode the elevator back down and left the building.

When Delaney returned to his vehicle, he took off his jacket, and threw it in the back. When his co-worker, who was waiting in the vehicle, asked him what happened, Delaney did not mention the fight. Instead, he lied and said that he was unable to deliver the packages because the intended recipient was unavailable. That evening, Delaney retreated to an island in Boston Harbor where he camped-out for the night and disposed of his knife. He returned to work the following Monday. When his supervisor, who had seen news coverage of the attack, asked him if he knew anything about the stabbing, he claimed to know nothing. He came to work again on Tuesday, but then called in sick for the following three days, and avoided the usual places he spent his time.

Delaney was eventually arrested and charged in state court with armed assault with intent to murder, and assault and battery by means of a dangerous weapon. He testified in his own defense. On cross-examination, the prosecutor questioned Delaney about his failure to produce the knife used in the attack. The following exchange took place:

```
Q:   . . . you don't have [the knife] here; do you?
A:   I wasn't requested to bring it.  This is the first I've
     heard.

Q:   That's the first you've heard?
A:   Of it being requested.

Q:   But you knew it was important; right?
A:   Yes.

Q:   And you pretty much knew that I'd be asking about it;
     wouldn't I?
A:   But you never did.

Q:   So you and I have never had conversation until today;
     have we?
A:   About the knife, no.

Q:   Or anything.
A:   No.  We've had conversations.

Q:   Besides saying "hello."
A:   Besides saying "hello," nothing detailed, I don't think,
     that I remember, except for in the courtroom.

Q:   I've never spoken to you outside –
A:   You have spoken to me but not lengthy conversation.

Q:   Except to say "hello"; right?
A:   Pretty much.  Pretty much.

Q:   You wouldn't have told me where the knife was anyway;
     would you?
A:   I just did.

Q:   You wouldn't have told me if I asked you; would you?
A:   I just did.
```

At the conclusion of trial, the jury convicted Delaney of armed assault with intent to kill, a lesser included offense of that originally charged, as well as assault and battery by means of a dangerous weapon.  Delaney filed a motion for new trial in the state trial court.  The court denied his motion, and Delaney

appealed, first to the Massachusetts Appeals Court and ultimately to the Massachusetts Supreme Judicial Court (SJC).  On appeal, he argued that the prosecutor violated his due process rights by commenting on (1) his failure to provide evidence to the police and (2) his unwillingness to speak with the government after his arrest. The SJC affirmed his conviction, holding in part:

> The defendant contends that the prosecutor's cross-examination improperly questioned him about his postarrest silence, his failure to provide the police with the knife, and his failure to provide the police with his own photographs of the bite mark on his shoulder.  No timely objections were made.  With respect to the defendant's postarrest silence, it was defense counsel-not the prosecutor-who elicited the defendant's testimony that he had refused to talk to the police. The prosecutor's questions went to the issue whether the defendant had ever spoken with the prosecutor, an inquiry that was justified by the defendant's testimony giving the erroneous impression that they had spoken before trial.
>
> With respect to the defendant's failure to produce two items of physical evidence (the knife and the photographs), both questions were improper. . . . We are satisfied that these two improper questions did not materially influence the verdicts. *Commonwealth v. Alphas, supra*, quoting *Commonwealth v. Freeman*, 352 Mass. 556, 564, 227 N.E.2d 3 (1967).

*Commonwealth v. Delaney*, 442 Mass. 604, 616 (2004).  In 2005, Delaney filed a petition for a writ of habeas corpus in the United States District Court for the District of Massachusetts.  The court denied his petition, but granted a limited certificate of appealability.

We review the district court's denial of Delaney's habeas petition *de novo*. *See Aspen v. Bissonnette*, 480 F.3d 571, 573 (1st Cir. 2007). To the extent the SJC reached the merits of Delaney's claim, we review to determine whether its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The prosecutor asked Delaney four questions that were potentially problematic under *Doyle*. The first two questions dealt with Delaney's failure to show his knife and a photograph of his shoulder to the police. The prosecutor's questions were: "You never showed [the knife] to the police?" and "You didn't show them that photograph that you had taken five days after the incident; did you?" The SJC held that these two questions were improper, but deemed them procedurally barred under the Massachusetts contemporaneous objection rule, because Delaney failed to object and the questions did not create "a substantial risk of a miscarriage of justice." *Commonwealth v. Alphas*, 430 Mass. 8, 13 (1999). Delaney does not contest this holding.

The only two questions at issue, then, are those posed by the prosecutor immediately after an exchange with Delaney regarding the extent of their interactions before trial. Delaney began the exchange by insinuating that he and the prosecutor had spoken

before trial. After Delaney admitted that the two had never held a substantive conversation outside of the courtroom, the prosecutor continued, and asked; "[y]ou wouldn't have told me where the knife was anyway; would you?" and "You wouldn't have told me if I asked you; would you?" Delaney contends that these questions were a direct comment on his post-arrest and post-*Miranda* silence.

**A.**

The district court concluded it should not review Delaney's constitutional claims as to the two questions above. The court held that because the SJC denied Delaney's claims as procedurally defaulted under the Massachusetts contemporaneous objection rule, its holding was based on an "independent and adequate state ground," which precluded habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991). Delaney argues that the district court was mistaken, because the SJC actually reached the merits of his constitutional claims, and its holding was therefore subject to habeas review.

The SJC began its procedural default analysis by stating that Delaney had failed to make a timely objection to any of the prosecutor's questions at issue. *See Delaney*, 442 Mass. at 616. As discussed earlier, the SJC concluded that the first two evidentiary questions (about the knife and photograph) were improper, but they were procedurally defaulted because (1) Delaney had not objected, and (2) the questions did not create "a

-7-

substantial risk of a miscarriage of justice." *See id.* at 615, *citing Alphas*, 430 Mass. at 13. The SJC's treatment of the other two questions, the only questions before us on appeal, was quite different. Rather than making an error determination and proceeding to the next step of whether that error posed a "substantial risk of a miscarriage of justice," the SJC held that there was never an error in the first place. The SJC concluded that the prosecutor's questions were a fair response to Delaney's misleading statements about their earlier conversations. *Id*. at 616.

Delaney argues that the SJC's decision goes to the merits of his constitutional claims, or at least does not "clearly and expressly" rely on the state procedural bar to dismiss them. *See Harris v. Reed*, 489 U.S. 255, 266 (1989). In *Harris*, the state court opened its analysis by pointing out that the defendant's claim could have been raised earlier in the proceedings. The Supreme Court held, however, that because the state court went on to consider expressly the merits of the defendant's claim, it had not "clearly and expressly" relied on the state procedural bar, and habeas review was proper. *Id*. This is arguably analogous to the facts before us.

On the other hand, the government contends that the SJC's determination was merely one step in the court's procedural default analysis. Under the Massachusetts contemporaneous objection rule,

if a defendant does not timely object to an error at trial, the court will extend appellate review only if the alleged error creates a "substantial risk of a miscarriage of justice." *Alphas*, 430 Mass. at 13. The court determines whether this "substantial risk" is present by considering whether the error "materially influenced" the guilty verdict. *Id.* This determination requires the court to consider, among other things, the strength of the government's case and the nature of the error in question. The government argues that the SJC was merely applying this "substantial risk" framework to the procedural default question when it determined that the prosecutor's comments were proper. Thus, the SJC was really relying on the procedural default argument, and only discussed the merits insofar as they related to the procedural rule regarding contemporaneous objection. There is some appeal to this argument, as it would seem that a court implicitly concludes there is a lack of "substantial risk of a miscarriage of justice" when it holds that there was no error to begin with.

Nevertheless, we concede, as Delaney argues, that the SJC's decision may not have "clearly and expressly" relied on the procedural default rule, as required by *Harris*, in dismissing his claims. We will not need to resolve this issue, however, if Delaney has failed to demonstrate that the comments were sufficiently prejudicial.

Delaney next argues that the SJC's decision on the merits of his claim was "contrary to, or involved an unreasonable application of, Federal law." 28 U.S.C. § 2254(d)(1). The SJC concluded that the prosecutor's questions were proper, because they were "justified by the defendant's testimony giving the erroneous impression that they had spoken before trial." *Delaney*, 442 Mass. at 616. Both parties agree that *Doyle* and its progeny allow a prosecutor to comment on a defendant's post-arrest silence if the defendant falsely suggests that he cooperated with the authorities. *See Kibbe v. DuBois,* 269 F.3d 26, 40 (1st Cir. 2001) (Lynch, J. concurring); *United States v. Fairchild*, 505 F.2d 1378, 1382-83 (5th Cir. 1975). The parties disagree, however, as to whether the prosecutor, in fact, was responding to Delaney's comments about their pre-trial conversations when he asked "[y]ou wouldn't have told me where the knife was anyway; would you?" and "[y]ou wouldn't have told me if I asked you; would you?"

It appears that any confusion about the pre-trial conversations was cleared up when Delaney admitted that he had not spoken with the prosecutor beyond saying "hello." The prosecutor's two follow-up questions seem less like an effort to clear the record, and more like a comment on Delaney's intransigence and refusal to answer questions directly. Once more, however, we need not reach the question of whether the SJC's decision represented an

"unreasonable" application of federal law, *see Williams v. Taylor*, 529 U.S. 362, 411 (2000), if Delaney has failed to demonstrate sufficient prejudice to warrant granting his petition.

## C.

This brings us to the critical issue before us. The Supreme Court recently made it clear that we review a habeas petitioner's claims of constitutional error in a state criminal trial for prejudice under a "substantial and injurious effect standard." *See Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007), *citing Brecht*, 507 U.S. 619. Under the *Brecht* standard, we must determine whether the constitutional errors complained of by Delaney had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

Delaney's entire claim rests on two questions posed by the prosecutor on cross-examination. These allegedly improper questions, at most, would have raised an inference that Delaney had a guilty conscience. The jury heard extensive evidence, however, that Delaney actively engaged in a cover-up after the assault, which was relevant to the guilty conscience issue. In particular, the jury heard evidence (1) that he lied about the incident to his co-workers and supervisors, (2) that he attempted to conceal his presumably bloody jacket, (3) that he spent the night after the attack camping-out on an island in Boston Harbor, (4) that he disposed of his knife on that island, and (5) that he avoided the

places he usually spent time when he suspected the police were looking for him. Given this overwhelming evidence of a guilty conscience, we conclude that the two additional questions posed by the prosecution did not have "a substantial and injurious effect or influence in determining the jury's verdict." *See id.*

Thus, regardless of whether he defaulted on claims due to the Massachusetts contemporaneous objection rule, or whether the state ruling was contrary to or an unreasonable application of federal law, Delaney is not entitled to habeas corpus relief. This follows because he has not been able to show prejudice under *Brecht*, an indispensable habeas requirement.

The district court's denial of Delaney's petition is AFFIRMED.