A Boston Municipal Court jury convicted the defendant of resisting arrest and of assault and battery on a police officer. These charges arose out of the defendant's arrest for allegedly attacking his girl friend. The defendant initially faced three additional charges for the alleged attack itself, but the Commonwealth agreed to a dismissal of those charges on the morning of trial.[2] On appeal, the defendant claims reversible error with respect to the jury's having learned that his arrest followed a report of domestic violence. He also claims that a witness improperly commented on his prearrest silence and that the prosecutor made various errors in his closing argument. We affirm.
Background. On the evening of April 27, 2015, two Boston police officers responded to a 911 call for a domestic violence incident. When the officers arrived at the residence, they spoke to the 911 caller and were told that the other party, later identified as the defendant, was in the back bedroom. The officers tried to speak to the defendant, but he appeared to be packing up his clothing and said only "I'm leaving" or "I'm out of here."
Based on their observations, the officers determined that they were going to arrest the defendant. Officer Carlson said to the defendant, "Put your hands behind your back," and then touched his right arm in an attempt to bring it behind the defendant's back to handcuff him. At that point, the defendant swung his left hand toward Officer Carlson and hit him in the face. Officer Carlson then pushed the defendant backwards towards a wall, but the defendant tripped on a container and both men fell, crashing into the wall and through the drywall. The other officer, Officer Conway, as well as a private security officer who was monitoring that building, responded to the commotion and assisted Officer Carlson in placing the defendant in handcuffs.
Discussion. 1. Reference to "domestic violence." After the Commonwealth dismissed the charges involving the defendant's alleged attack on his girl friend, the defendant moved in limine to preclude the Commonwealth from "eliciting any information about domestic violence." Following a brief hearing, the judge orally ruled that the Commonwealth could not delve into the alleged bad acts, specifically "that [the defendant] choked [his girl friend]." At the same time, the judge ruled that the Commonwealth could elicit testimony as to the police officers' observations, to explain why they decided to place the defendant under arrest. Neither side, nor the judge, specifically addressed whether the police witnesses could refer to the nature of the 911 call to which they were responding.
On direct examination, Officer Conway testified that he responded to a "domestic violence call involving an intimate partner" on the night in question. The defendant objected to the reference to "domestic violence" and moved for the judge to grant a mistrial and to strike the statement. The judge denied a mistrial but provided a curative instruction. Specifically, the judge instructed the jury that the defendant was "charged only with the crimes before you" and that they must "[d]isregard any other alleged crimes ... by the defendant."
On appeal, the defendant argues that the judge erred in refusing to grant a mistrial. The denial of a mistrial is reviewed for abuse of discretion. Commonwealth v. Santana, 477 Mass. 610, 625 (2017). When reviewing for abuse of discretion, we consider whether the judge "made 'a clear error of judgment in weighing' the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). We give deference to the judge's determination of whether to declare a mistrial because "[a] trial judge is in the best position to determine whether a mistrial, an extreme measure available to a trial judge to address error, is necessary, or whether a less dramatic measure, such as a curative instruction, is adequate." Santana, supra at 626, quoting Commonwealth v. Amran, 471 Mass. 354, 360 (2015).
The judge did not abuse his discretion in denying a mistrial. During his consideration of the pretrial motion in limine, he appropriately expressed concern about allowing details of the alleged domestic violence incident to come in at trial. See Commonwealth v. Berry, 420 Mass. 95, 109 (1995) ("trial judges must take care to avoid exposing the jury unnecessarily to inflammatory material that might inflame the jurors' emotions and possibly deprive the defendant of an impartial jury"). However, as noted, the judge never said that police witnesses could not describe the type of call they had received or that any reference to "domestic violence" was off limits. Further, the jury already had heard testimony that the officers decided to place the defendant under arrest based on their conversations with the 911 caller.
Moreover, to the extent that it was prejudicial for the jury to hear the phrase "domestic violence," the judge immediately and forcefully gave a curative instruction. The judge did not abuse his discretion in concluding that such instructions adequately addressed any prejudice to the defendant.[3] See Santana, 477 Mass. at 626. Finally, we note that after Officer Conway made his statement and the judge gave his curative instruction, the phrase "domestic violence" was never repeated at trial, nor was it referenced in closing arguments.
2. Prearrest silence. At trial, Officer Carlson testified that he and his partner "tried to speak to [the defendant], and he was not interested in speaking back with [them]." The officer elaborated that "[the defendant] wouldn't answer any questions that [they] had initially asked him." On cross-examination, defense counsel elicited further detail regarding the defendant's unresponsiveness to the officers' questions. In their respective closing arguments, both sides tried to make use of the lack of verbal interaction between the defendant and the police. The prosecutor argued that one of the officers "wanted to ask [the defendant] a question, get his side of the story. What did the defendant do? He didn't look him in the eye. He wouldn't answer his questions." In support of his contention that the defendant did not "lash[ ] out" at the officers, defense counsel stated that "[t]hey don't even tell you that [the defendant] said a word ... during this entire struggle, you haven't heard that [the defendant] said anything."
The defendant now argues for the first time on appeal that the references to his lack of responsiveness to the officers' inquiries constitutes improper commentary on the defendant's "prearrest silence." See Commonwealth v. Irwin, 72 Mass. App. Ct. 643, 651 (2008), quoting Commonwealth v. Conkey, 430 Mass. 139, 141 (1999) (" 'evidence of a defendant's refusal to comply with a police request' is inadmissible 'because in so refusing a defendant furnishes evidence against himself, and admission of that evidence would violate art. 12' "). Because no objection was raised at trial, we review only for whether any error caused a substantial risk of a miscarriage of justice. See Commonwealth v. Curtis, 417 Mass. 619, 623 (1994).
Here, the defendant's unresponsiveness occurred prior to the offenses for which the defendant was being tried (resisting arrest and assault and battery on a police officer). Thus, the defendant's silence could not have been taken as any evidence of consciousness of guilt for those offenses. Rather, the Commonwealth relied on the references to the defendant's responsiveness merely to set the scene regarding whether a reasonable person in the defendant's position would have understood that he was being placed under arrest. We discern no error, much less a substantial risk of a miscarriage of justice.[4]
3. Closing argument. The defendant next asserts that the prosecutor made various improper statements in his closing argument. In his own closing, defense counsel argued that the police used excessive force and sought to call into question the reliability and credibility of the three Commonwealth eyewitnesses. He highlighted the differences between their individual accounts of what happened, even going so far as to insinuate that they had tried, but failed, to coordinate those accounts by stating that they "can't even agree on some very basic facts concerning what happened." Counsel also suggested that one of the officers was biased because he had gone on paid medical leave following the incident, and thus might have had "a stake in the outcome [of the case]" or "an investment ... in the outcome that [wasn't] immediately apparent upon first glance."
In his closing, the prosecutor methodically walked through the evidence while arguing that the Commonwealth had proved the elements of each crime beyond a reasonable doubt. Such marshalling of the evidence was proper, see Commonwealth v. Quigley, 391 Mass. 461, 464 (1984), and we discern no merit in defendant's claims that the prosecutor improperly inserted his own opinions.[5]
Nor do we agree that the prosecutor improperly vouched for the witnesses when he characterized them as being "candid ... upfront and honest" in their testimony. See Commonwealth v. Chaleumphong, 434 Mass. 70, 78 (2001) (prosecutor did not vouch in closing argument because he "did not express his personal belief in the credibility of any witness or indicate that he had special knowledge to determine credibility"). In addition, with defense counsel having insinuated that the police witnesses were biased or worse, the prosecutor was "entitled to make a fair reply to the defendant's closing argument." Commonwealth v. Smith, 404 Mass. 1, 7 (1989). Similarly, we see no problem with the prosecutor asking the jury to consider the motivations of the police officers, and whether they would have "commit[ed] the act of perjury" after "making concessions" rather than "demoniz[ing] the defendant." While the prosecutor's asking the jury to think about "what [the officers] do" was better left unsaid (since it could be taken to suggest that the officers should be believed because they were police officers), this isolated remark could not have worked sufficient prejudice to warrant reversal.
We discern no hint of an error in the prosecutor's arguing that "in every significant way, [the eyewitnesses'] stories were consistent." The prosecutor then took this one step further, arguing that if the officers' testimony had been "too consistent," it would have been "suspicious." In other words, the prosecutor argued that the police testimony was more believable because it was inconsistent. However, as the defendant now acknowledges, the judge issued a curative instruction in response to his objection.[6] There is no showing on the record that the defendant renewed his objection after the curative instruction was given, and, in any event, we are unpersuaded that any prejudice caused by the prosecutor's argument was not sufficiently cured by the instruction. See Commonwealth v. Amirault, 404 Mass. 221, 239-240 (1989).
Judgments affirmed.

The dismissed charges were assault and battery on a family or household member, strangulation or suffocation, and assault and battery by means of a dangerous weapon.

The defendant separately argues that the judge committed reversible error in not striking the evidence from the record. Putting aside that the defendant did not renew his motion to strike after the judge told the jury to "[d]isregard any other alleged crimes," the curative instruction was the functional equivalent of striking the testimony.

The defendant's own efforts to make use of the defendant's unresponsiveness underscores the lack of any demonstrated prejudice.

At one point, the prosecutor stated that "[i]f you believe that testimony, then ... there is no doubt that the defendant is guilty of the crimes charged." Such absolutist phrasing was better left unsaid, but read in the context of the argument as a whole, see Commonwealth v. Dixon, 425 Mass. 223, 230 (1997), we are confident that the jury understood this as the prosecutor's enthusiastic claim that he had met his burden. See Commonwealth v. Kozec, 399 Mass. 514, 517, (1987) ("A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed"). Further, the fact that the defendant raised no objection to this phrasing is "some indication that the tone [and] manner ... of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial." Commonwealth v. Lyons, 426 Mass. 466, 471 (1998), quoting Commonwealth v. Mello, 420 Mass. 375, 380 (1995).

Parts of the instruction were marked as indecipherable on the transcript, and -- despite the apparent best efforts of all involved -- could not be recreated. However, we do know that the judge expressly instructed the jury not to consider "any such arguments," and the defendant acknowledges that the judge's directive was a "curative instruction" prompted by his objection. We also can discern that the judge's concern had to do with the topic of "witnesses collaborat[ing] in manufacturing testimony."